### WILSON v. EISNER, Collector of Internal Revenue.

(Circuit Court of Appeals, Second Circuit. April 3, 1922.)

No. 250.

1. **Internal revenue ⬚⟹7—Raising and breeding of horses by one exhibiting and racing them for prizes and purses held a "business."**

The raising and breeding of horses by one who had a large farm in charge of a force of men caring for the horses and the farm, and who received his income from the business by way of prizes at fairs, purses at race tracks, and sales of stock, had all the essentials of a "business," so as to entitle him to deduct his losses therein, in computing his income tax, though he was a sportsman, in the sense of being fond of racing horses.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Business.]

2. **Internal revenue ⬚⟹25—Assessment of income tax presumptively proper, but presumption not conclusive in action to recover back.**

The assessment by the collector of internal revenue of an additional income tax was presumptively accurate and proper but the presumption was not conclusive in action to recover back.

3. **Internal revenue ⬚⟹38—Person suing to recover taxes had burden of showing engagement in enterprise in which losses occurred as a business.**

One suing to recover back an income tax paid under protest, and claiming the right to deduct losses in an enterprise engaged in by him, had the burden at the outset of establishing that he was engaged in such enterprise as a business for profit.

4. **Internal revenue ⬚⟹38—Where plaintiff showed enterprise engaged in for profit, defendant could not overcome proof by inference.**

Where plaintiff, suing to recover back an income tax paid under protest, sustained the burden of showing that an enterprise in which losses were sustained was engaged in as a business for profit, defendant could not overcome such proof by mere inference.

5. **Internal revenue ⬚⟹38—Whether plaintiff engaged in business for profit was for court, when facts undisputed.**

The question whether plaintiff was engaged in the business of raising and breeding horses, in which losses were sustained, for profit or pleasure, was one for the court, and it was error to leave the question of law to the jury, where the facts and circumstances were admitted or undisputed.

6. **Trial ⬚⟹139(1)—Verdict properly directed, when evidence and all justifiable inferences would not support verdict for defendant.**

Where all of the evidence, and all the inferences which could be justifiably drawn therefrom, was insufficient to support a verdict for defendant, a verdict for plaintiff should have been directed.

⬚⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Error to the District Court of the United States for the Southern District of New York.

Action by Richard T. Wilson against Mark Eisner, Collector of United States Internal Revenue for the Third District of the State of New York, to recover moneys paid under the Income Tax Law Act Oct. 3, 1913 (c. 16, § 2, 38 Stat. 166) assessed for the year 1913. Judgment for defendant. Plaintiff brings error. Reversed.

Taylor, Jackson, Brophy & Nash, of New York City (John G. Jackson, of New York City, of counsel), for plaintiff in error.

William Hayward, U. S. Atty., of New York City (Richard S. Holmes, Sp. Asst. U. S. Atty., of New York City, and Chester A. Gwinn, Sp. Atty. Bureau of Internal Revenue, of Washington, D. C., of counsel), for defendant in error.

Before HOUGH, MANTON, and MAYER, Circuit Judges

MANTON, Circuit Judge. For convenience, we shall refer to the parties herein as plaintiff and defendant, as below. The defendant, by virtue of his authority, on July 5, 1916, assessed against the plaintiff an additional income tax for the year ending December 31, 1913. Pursuant to this demand of the defendant, the plaintiff paid $962.12 under protest and claim of duress. A receipt was given, acknowledging payment of this additional tax, under date of November 22, 1917. Thereafter the plaintiff appealed to the Commissioner of Internal Revenue, pursuant to the regulations of the Secretary of the Treasury, asking to vacate this additional assessment as to $962.12 and pay back the said sum on the ground that the collection thereof was due to an illegal assessment. No decision was rendered, and, six months having elapsed, the plaintiff began this action to recover.

The claim is that the Commissioner of Internal Revenue, in assessing and collecting said additional tax, did so disregarding the income received, and in disallowing as a deduction the expenses paid by the plaintiff in conducting and operating a business as a stock raiser and breeder of horses during the year 1913. The plaintiff since 1905, was engaged in the business of breeding horses and raising stock as a business, for the purpose of profit and gain, and, as he says, to improve the standard breed of horses. His horses were entered at race meets in competition for money and prizes, and some were sold and others bought. In some instances, the plaintiff derived substantial profit from his business, as is shown by his returns for several years. In other years, he lost money. In 1913, he had a total of 57 mares, yearlings, and horses, and employed in the operation of his business about 29 persons, and gave his personal attention and supervision to the business. He rented a farm in Kentucky and subsequently purchased the farm. In his return for 1913, he entered an item of $33,338.30 as his income derived from this business, and in item of $52,357.35 as the expenses thereof. This expense account included the care, feed, and marketing of the horses. It thus appears that the business in 1913 lost $19,919.05. It is established that this amount was expended in conducting and operating the plaintiff's business as a horse breeder

and stock raiser, and was not in any respect an addition to the capital, nor was it an item for personal living or family expenses.

Plaintiff, in his return, sought to have charged as a loss, against his profits for that year, this loss incurred in this business. In plaintiff's tax return for 1914, he sought to charge off, as against his profits, the loss sustained for that year. Subsequently this was disallowed, and the plaintiff was obliged to pay an additional tax. He did so under protest, and commenced another action to recover such tax. It appears from the record that the parties stipulated to try both cases together, although in this bill of exceptions the pleadings dealing with only the 1913 tax are incorporated.

Upon the trial, the plaintiff called three witnesses. The defendant's proof consisted of the income tax returns of the plaintiff for the years in dispute. The court submitted to the jury for special finding two specific questions: First. In the year 1913–1914, was the plaintiff, Richard T. Wilson, engaged in business as a horse breeder and stock raiser? Second. Were the sums of money paid by the plaintiff for transportation of horses and men from the stock farm in Kentucky to the Belmont Park race track, and to other race tracks, reasonable and necessary in the carrying on of the stock-raising and horse-breeding business, if there was one? The first question was answered "No," and under the court's charge it became unnecessary to answer the second question.

The plaintiff called his agent, who took care of his accounts. He testified that in 1913 he had 33 horses in training, 9 mares, 1 stallion, 8 yearlings and 6 weanlings; in 1914, 35 horses in training, 13 mares, 1 stallion, 6 yearlings and 7 weanlings, and further that the plaintiff started raising and breeding horses in 1898; that in 1913–1914 the horses were boarded, but the plaintiff had full use of the farm, and no other horses were kept there. Later the farm was leased. Plaintiff has no other occupation than this industry. The farm consisted of some 10 barns and houses for the employees. The acreage was used for raising corn and hay for the horses. The employees were a manager, farm hands, trainers, and two jockeys. The witness testified at some length as to their method of raising horses and the value of the horses. The source of income was derived from the sale of horses, and in this connection the management deemed it good business to, and in fact did, enter them in races where money prizes were obtained. They were also exhibited at county fairs. They were registered animals. He testified to the expenses as above stated in 1913, and to an expense of $71,490.38 ln 1914. The receipts for 1914 were $38,212.60.

The plaintiff testified that he resided in New York city; that in 1913–1914 he had no other business except breeding and raising horses. The horses were exhibited in the New York State Fair and were used in racing. He corroborated his agent's testimony as to the farm, which consisted of about 500 acres. The witness testified that he devoted most of his time to this business in 1913–1914, and that he looked at raising horses from the standpoint of business. He pointed out that his later returns, after 1914, show an increase in earnings, and that the losses were less, and, in some years, the business was profitable.

The decrease in losses he attributed to an improvement in conditions at the farm; that he intended to make the business a profitable one and considered entering into the breeding of horses to this end. He pointed out that it took five or six years to obtain a strain of blood and stock which would be profitable. He imported horses from England and corroborated the testimony of his agent in other details. His horse trainer testified in corroboration of the testimony of the previous witnesses.

At the end of the plaintiff's proof, the defendant moved for a dismissal, which was denied. He then offered in evidence the returns for 1913 and 1914 and rested. Whereupon the plaintiff moved for the direction of a verdict. This was denied and the questions referred to submitted to the jury for their determination.

[1] The plaintiff contends that it was error for the court to refuse to direct a verdict in his favor. The question presented was whether the plaintiff was engaged in this enterprise as a business for profit or for pleasure. We think that on this proof, no question of fact was presented for submission to the jury. The undisputed proof made it a question of law for the court. Was the plaintiff carrying on a business within the meaning of the taxing act? In the corporation tax case of Flint v. Stone Tracy Co., 220 U. S. 107, 31 Sup. Ct. 342, 55 L. Ed. 389, a tax was assessed upon a corporation for the privilege of doing business in its corporate capacity. It became necessary to inquire what it was to do business, and the Supreme Court approved the definition of "business" given in former cases, as follows:

"Business is that which occupies the time, attention and labor of men for the purpose of livelihood or profit."

In Von Baumbach v. Sargent Land Co., 242 U. S. 503, 37 Sup. Ct. 201, 61 L. Ed. 460, a corporation was organized under the laws of Minnesota for "buying, owning, exploring and developing * * * and dealing in lands." It appeared that, in addition to receiving royalties on some mining leases, it employed another company to inspect the lessee's operations and keep them to their contracts, made some mining explorations, at expense, on other parts of their properties, sold and leased parcels, and sold timber lands. It was held that they were carrying on business within the meaning of the Corporation Tax Law (36 Stat. 112), and that the mining leases which were involved and sold were not equivalent to sales of property, and that the moneys paid by the lessee to respondents were not converted capital, but rents and royalties, and as such were income proper to be included in measuring their taxes under the Corporation Tax Law. The Supreme Court approved the definition given in Bouvier's Law Dictionary that:

"Business is a very comprehensive term and embraces everything about which a person can be employed."

All the essentials of business were present in the enterprise undertaken by the plaintiff. He had a place of business, a large farm of 500 acres, cultivated feed for the horses, raised young horses, and had a force of men to care for them and for the farm. He did not reside there. He received income from the business by way of prizes at

fairs, purses at race tracks, and sales of his stock. He kept books showing a record of his business transactions. The farm was in charge of his personal business agent. He spent considerable time watching his horses at the race track and also in shows. He gave personal attention to the enterprise. The years 1909, 1916, 1919, and 1920 showed a profit, and he gave the benefit of this to the government by paying taxes therefor. The years 1910, 1911, 1912, 1913, 1914, 1915, 1917, and 1918 showed a loss. The amount of his losses for the years questioned here are not disputed. Raising and breeding horses may well be an enterprise entered into as a business for profit.

We can see no difference between the plaintiff's position and that of the ordinary ranchman, who raises horses for the market, to be sold for trucking or draying purposes. If it be a fact, as it is earnestly urged by the defendant, that the plaintiff was a sportsman in the sense that he is fond of racing horses, it cannot change the character of this undertaking. Success in business is largely obtained by pleasurable interest therein. Professional baseball playing has become a business, as well as an amusement for the public. And so with numerous other business enterprises, such as the theaters, circus, and the motion picture industry. We think the evidence here requires the conclusion that the plaintiff was engaged in a business.

[2-4] The assessment having been made, presumptively it is accurate and proper; but this presumption is not conclusive. The burden at the outset was upon the plaintiff of establishing that he was engaged in this enterprise as a business for profit. The testimony offered is sufficient to sustain the burden. The defendant cannot overcome this proof by mere inference. Plaintiff has fully shown the facts in regard to his purposes for entering into the business and his method of carrying on the same.

[5, 6] Since the facts and circumstances are admitted or undisputed, the question of whether the plaintiff was engaged in business for profit or pleasure became one for the court to decide, and it was error to leave the question of law to the determination of a jury, for it is only where some question of fact is controverted that the intervention of a jury is required. Oscanyan v. Arms Co., 103 U. S. 261, 26 L. Ed. 539; Travelers' Ins. Co. v. Selden, 78 Fed. 286, 24 C. C. A. 92; Union Pacific v. McDonald, 152 U. S. 262, 14 Sup. Ct. 619, 38 L. Ed. 434. After the plaintiff and defendant rested, and the case was closed, on all the evidence and all the inferences which could be justifiably drawn from it, it was insufficient to support a verdict for the defendant. Under such circumstances, it is the sanctioned practice, by repeated decisions, to direct a verdict for the plaintiff. Baylis v. Travelers' Ins. Co., 113 U. S. 316, 5 Sup. Ct. 494, 28 L. Ed. 989; Pleasants v. Fant, 22 Wall. 116, 22 L. Ed. 780. The plaintiff's exception to the refusal of the court so to do was well taken.

Judgment reversed.