## MOSES TAYLOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 8789.   Promulgated May 24, 1927.

Losses sustained in farming, when engaged in as a business, are deductible.

*George W. Wickersham, Esq.*, and *Clarence Castimore, Esq.*, for the petitioner.
*Shelby S. Faulkner, Esq.*, for the respondent.

This proceeding arises from a determination of a deficiency in income tax of $28,789.70 for the year 1920, and $57,359.08 for the year 1921, due to the failure of the Commissioner to allow deductions from gross income of certain alleged farm losses, amounting to $59,572.46 in 1920 and $108,887.01 in 1921.

### FINDINGS OF FACT.

The petitioner is a resident of Portsmouth, R. I., and during the taxable year was engaged in a number of businesses and had his

principal office in New York City. During the years 1920 and 1921 he owned a farm known as the Annandale Farm, located at Mount Kisco, N. Y., and during the last five months of 1921 he owned another farm known as the Glen Farm, at Portsmouth, R. I.

The Annandale Farm was purchased by petitioner over a period of years from 1901 to 1920 and on the latter date the farm consisted of 600 acres. During the years 1920 and 1921 petitioner employed one William Barclay, an experienced farmer and stockman, to manage this farm. About 180 acres consisted of woodland, the balance being cultivated for the production of corn, wheat, rye, oats, hay, potatoes, apples, and other farm products. Petitioner also operated on this farm a dairy and maintained thereon a large amount of live stock for breeding and sales purposes. During the years in question he had on this farm more than 30 thoroughbred registered Guernsey cattle; 20 sheep; 250 laying hens, and during each year more than 1,500 chickens were hatched. In addition to the required number of horses for the operation of the farm he maintained a number of Percheron draft horses and thoroughbred saddle horses for breeding and sales purposes. On this farm there were two residences, a number of cottages for farm employees, and the usual dairy barns, horse barns, poultry houses, and other necessary outbuildings. An average of 17 to 20 workmen were employed on this farm.

The Glen Farm was acquired by petitioner in August, 1921, a half-interest therein by inheritance from his father and the other half by purchase from his brother for $65,000. This farm consisted of 500 acres and on it were kept 40 registered Guernsey cattle, 40 horses, more than 100 sheep, and a large number of fowls of various kinds. Petitioner also maintained on this farm a number of thoroughbred draft and saddle horses for breeding and sales purposes. These horses were exhibited from time to time at fairs and won many prizes. Petitioner employed one Charles Gifford, an experienced farmer and stock raiser, to manage this farm. About 30 men were regularly employed to operate this farm. As on the Annandale Farm, this farm contained numerous buildings consisting of farm cottages, horse and cattle barns, poultry houses and other necessary buildings.

Accurate records of receipts from sales and of expenditures on both farms were kept by petitioner. He lived on the Annandale Farm in 1920 and 1921 but now resides on the Glen Farm. In 1920, $9,752.63 was received from the sale of farm produce, cattle, poultry, butter, milk, and eggs, and in 1921 petitioner received $9,989.31 from similar sales on the Annandale Farm. During the five months of 1921, in which petitioner owned the Glen Farm, he received $4,206.09 from the sale of farm produce, live stock, poultry.

butter, milk, and eggs. Any produce used by the petitioner at his home was charged to him at the prevailing market prices at which such produce was sold to the public and no portion of the cost of maintaining petitioner's home was included in the farm expenses.

These farms were not intensively operated prior to 1920 and it was in the latter part of 1919 and early in 1920 that petitioner began the farming, dairy, and horse and cattle-breeding operations. Although prior to 1920 petitioner operated his farm on a commercial basis, he, at the time he concluded to expand his operations and to operate the farm on a larger scale, was planning to give up his interest in other business and devote more of his personal time to farming. During the taxable years petitioner actively supervised and directed all operations on the farms and was in personal touch with everything that was going on.

In addition to the operation of these farms he was interested in corporations engaged in the manufacture of steel and he was also interested in banks. He was a stockholder and a director in a number of corporations. He was always kept advised of the farming operations and devoted at least two days a week of his personal time to management and inspection of these farms. He was consulted from day to day by his farm managers and gave instructions as to what should be done in the operation of the farms.

Petitioner was a man of wealth. He gradually disposed of his business interests, other than the farms, during the period 1920 to 1922. During the taxable years petitioner carried on his farming operations as a business and not merely for pleasure or as a hobby. For the year 1920 he sustained a net operating loss of $59,572.46 and for the year 1921 a net operating loss of $82,742.09 in the operation of the Annandale Farm at Mount Kisco. During the five-month period from August to December, 1921, petitioner sustained a net operating loss of $26,144.92 in the operation of the Glen Farm at Portsmouth, R. I., resulting in a total loss of $59,572.46 for 1920 and $108,887.01 for the year 1921, which petitioner claimed as deductions in his tax returns for these years and which the Commissioner disallowed.

## OPINION.

LITTLETON: The Board is of the opinion from the entire record in this proceeding that petitioner is entitled to deductions of the losses claimed for 1920 and 1921. The evidence, consisting of the testimony of the petitioner, his managers and employees, shows that these farms were operated as a business. Petitioner was a man of considerable means and in a position to bear losses, if necessary,

for a few years in the operation of these farms in order to bring them to the point of producing a profit. It was testified that his purpose in operating the farms as he did was ultimately to make them show a profit from the sale of farm produce, horses, cattle, sheep, poultry, and dairy produce.

The Commissioner contends that the fact that petitioner sustained losses in the operation of these farms and that he had other business interests shows that the farms were operated for pleasure and not as a business. In the opinion of the Board the contention that the farms were not operated as a business is not supported by any evidence in the record. The two farms consisted of 1,100 acres, practically all of which were under cultivation.

During the taxable years petitioner operated a dairy and maintained for dairy and breeding purposes more than 70 thoroughbred registered cattle and was engaged in raising cattle for sale. He maintained on the farm as many as 130 sheep in each of the years for commercial purposes. He was engaged in breeding thoroughbred draft and saddle horses for sale and also raised a large amount of poultry for sale. In view of these facts it is difficult to see how it could be said that these farms were not operated as a business. The mere fact that petitioner sustained losses and that he had other business interests does not prove that the farms were not so operated. See *Thomas F. Sheridan*, 4 B. T. A. 1299; *Samuel Riker, Jr., Executor*, 6 B. T. A. 890. In *Plant* v. *Walsh*, 280 Fed. 722, the court considered a similar question to that involved in this proceeding and in its opinion said:

\* \* \* The evidence shows that he had been engaged in farming since 1904 or 1905. He kept increasing the size of his farm, until in 1912 it numbered several hundred acres. He had not made any profit on his farm prior to or during 1914, but in 1912 he formed an organization of experts for the purpose of putting the farm on a business basis, and installed an elaborate accounting system under the supervision of a comptroller. Large quantities of farm produce were marketed at prevailing prices, and every effort was made to establish the farm's reputation as a high-class modern farm. Mr. Plant gave a good deal of his time to bringing about efficiency and putting the farm on a paying basis. Notwithstanding these efforts, the operation of the farm resulted in a loss for 1913 of $107,680.70, or about 200 per cent. of the receipts, and in 1914 of $106,431.98, including depreciation, or about 150 per cent. of the receipts.

The defendant argues that the great excess of expenses over receipts proves that "farming was a pleasure or hobby with Mr. Plant, and not a source of profit, and that his farm was not conducted on a commercial basis"; that he engaged in farming, not for the purpose of making a profit, but because of the pleasure he derived from that occupation; and that therefore the expense of conducting the farm was not a business expense, but a personal expense, and not deductible.

I think, however, that the evidence establishes clearly that Mr. Plant's farm was conducted as a business enterprise and with the expectation that it would

eventually become profitable. The mere fact that a heavy loss was incurred in the initial stages of so large an enterprise does not necessarily show the contrary. But, even though this is not so, I do not believe that farming, when engaged in as a regular occupation and in accordance with recognized principles and practices, is any the less a business within the meaning of the statute, because the person engaging in it is willing to do so without regard to its profitableness, because of the pleasure derived from it.

Again, in *Wilson* v. *Eisner*, 282 Fed. 38, the court said, in respect of the question whether a taxpayer was entitled to deduct losses sustained in the operation of a farm, that—

All the essentials of business were present in the enterprise undertaken by the plaintiff. He had a place of business, a large farm of 500 acres, cultivated feed for the horses, raised young horses, and had a force of men to care for them and for the farm. He did not reside there. He received income from the business by way of prizes at fairs, purses at race tracks, and sales of his stock. He kept books showing a record of his business transactions. The farm was in charge of his personal business agent. He spent considerable time watching his horses at the race track, and also in shows. He gave personal attention to the enterprise. The years 1909, 1916, 1919, and 1920 showed a profit, and he gave the benefit of this to the government by paying taxes therefor. The years 1910, 1911, 1912, 1913, 1914, 1915, 1917, and 1918 showed a loss. The amount of his losses for the years questioned here are not disputed. Raising and breeding horses may well be an enterprise entered into as a business for profit.

We can see no difference between the plaintiff's position and that of the ordinary ranchman, who raises horses for the market, to be sold for trucking or draying purposes. If it be a fact, as it is earnestly urged by the defendant, that the plaintiff was a sportsman in the sense that he is fond of racing horses, it cannot change the character of this undertaking. Success in business is largely obtained by pleasurable interest therein. Professional baseball playing has become a business, as well as an amusement for the public. And so with numerous other business enterprises, such as the theatres, circus, and the motion picture industry. We think the evidence here requires the conclusion that the plaintiff was engaged in a business.

We think the facts in this proceeding are even stronger in favor of petitioner's contention than those obtaining in the cases cited. We have in this proceeding every element of a business. If the petitioner saw fit to continue the operation of the farms in the manner in which he did, at a loss, that is no concern of this Board. He is entitled to deduct such losses as he sustains under the law. The Board is of the opinion from the evidence in this proceeding that the losses of $59,572.46 for the year 1920 and $108,887.01 for the year 1921 were losses sustained in the carrying on of a business within the meaning of the Revenue Act of 1918, and were therefore proper deductions from gross income.

*Judgment will be entered on 15 days' notice, under Rule 50.*