ROSE P. CRANE, EXECUTRIX, ESTATE OF FREDERICK G. CRANE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 10695, 15374, 16789.   Promulgated December 1, 1927.

*Laurence Graves, Esq.*, and *James F. Bacon, Esq.*, for the petitioner.

*P. J. Rose, Esq.*, for the respondent.

OPINION.

SMITH: Both the Revenue Acts of 1918 and 1921 provide that in computing net income there shall be allowed as deductions "Losses

sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in trade or business" or if incurred in any transaction entered into for profit, though not connected with the trade or business. The petitioner contends that the decedent's farming operations above described were carried on as a "business" within the meaning of the term as it is used in the statutes and for a profit, and that the losses sustained are, therefore, deductible in computing net income. The respondent contends that the decedent was not engaged in farming as a trade or business; that the farm was not operated for profit but for pleasure, and that the losses were, therefore, personal losses and are not deductible.

We can not agree with the respondent's contentions. The mere fact that a farm has been operated over a number of years at a loss for each year, the fact upon which respondent mainly relies, does not justify the conclusion that the farm was not operated as a business enterprise or with the hope and expectation of realizing a profit. *Plant* v. *Walsh*, 280 Fed. 722; *Samuel Riker, Jr., Executor*, 6 B. T. A. 890; *Moses Taylor*, 7 B. T. A. 59.

Business has been defined by the Supreme Court as "that which occupies the time, attention, and labor of men for the purpose of livelihood or profit." See *Flint* v. *Stone Tracy Co.*, 220 U. S. 107. The evidence is that the operation of the farm here in question occupied, during the taxable years, practically all of the time, attention and labor of some 35 men, including the decedent. The evidence further shows that the farm was operated upon a practical and business-like basis and that the decedent made considerable effort from time to time to turn the yearly deficit into a profit. His ultimate failure in this may have been due to numerous causes. Some of them have been ascertained and recounted. About the year 1917 the herd of pure-breed cattle was found to be infected with tuberculosis. Later on it developed that another disease known as contagious abortion was afflicting the herd. As a result of these diseases the herd had to be disposed of at a heavy loss extending over the years 1917 to 1921. Excessive rainfall during the year 1919 caused considerable damage to the crops, which made it necessary to purchase feed for the stock during the year 1920, increasing operating expenses for that year. The evidence shows that the decedent made every effort to put his farm upon a profitable basis. In the first place he improved his lands. He introduced pure-breed cattle. He put into operation a dairy and a poultry business. He purchased cattle to fatten for the market. He raised hogs and draft horses for sale. He set out a large orchard for the purpose of producing fruit for the market. Certainly these are efforts that are usually put forth for business reasons and for the

purpose of gain. He kept a separate bank account for the farm and employed a bookkeeper to handle the farm accounts. He finally engaged an expert accountant to install a thorough accounting system whereby the exact result of the operation of each department could be ascertained. Some of the departments which persistently showed losses were discontinued.

The decedent devoted practically all of his time to the farm. It was not a diversion or a hobby with him but a vocation. He was himself a farmer. His interest was centered in farming as a profession. He strove to make his farm an exemplary one and to demonstrate to other farmers of his community the practicability of scientific farming. He employed men educated along these lines and capable of carrying out his ideas. He was not a sportsman. His farm boasted neither a golf course nor a race track, nor any of the other so-called luxuries often associated with a wealthy man's country estate. Every effort of the farm was directed towards the production of merchantable produce. All of the produce was marketed to the best advantage possible. The gross receipts for each of the years 1917 to 1922, inclusive, ranged from approximately $21,000 to $70,000. The losses ranged from approximately $52,000 to $100,000. On an average the losses for each year were about twice the gross receipts. In the case of *Thatcher* v. *Lowe*, 288 Fed. 994, which is relied upon by the respondent, the losses for each of the two years were over $16,000 and the gross receipts were $1,100 in one year and $1,600 in the other. In that case the court said that the test was one of actual intention and that it had nothing to go on but the gross receipts and losses. Here there is ample evidence to overcome the presumption, if any, that because no profit was actually earned over a period of years it was not a business undertaken for profit.

In the case of *Plant* v. *Walsh*, *supra*, the test of whether a farm was operated as a business was said to be whether farming was engaged in as a regular occupation and in accordance with recognized business principles and practices. To the same effect is *Wilson* v. *Eisner*, 282 Fed. 38.

We think that the evidence in this case meets these tests as well as those which we have heretofore laid down in *Samuel Riker, Jr.*, *supra; Thomas F. Sheridan*, 4 B. T. A. 1299; *August Merckens*, 7 B. T. A. 32, and *Moses Taylor*, *supra*, and that the losses sustained are deductible in computing net income for the years in question.

*Judgment will be entered on 15 days' notice,* *under Rule 50.*

Considered by TRUSSELL, LOVE, and LITTLETON.