*122 OPINION.
Smith:
(1) The first question presented by this proceeding is the deduction from gross income of losses sustained from the operation of the Caumsett Farm. Section 214 (a) of the Revenue Act of 1921 permits a taxpayer to deduct from gross income, in computing net income:
*123 (1) All tlie ordinary and necessary expenses paid or incurred during the taxable year in carrying- on any trade or business, * * *
* sjs tfs * Hi 5ft
(4) Losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in trade or business.
The losses are deductible, provided the Caumsett Farm was’ operated as a trade or business for profit. Plant v. Walsh, 280 Fed. 722; Thatcher v. Lowe, 288 Fed. 994; A. F. T. R 1931; Deering v. 722; Thatcher v. Lowe, 288 Fed. 994; Peering v. Blair, 23 Fed. (2d) 975. The petitioner contends that the Caunisett Farm was operated for profit within the meaning of the taxing statute and the mere fact that it was operated at large losses in 1923, and subsequent years, does not change the character of the enterprise as a business for profit. In support of his contention the petitioner cites numerous decisions of the Board and of the courts in which losses sustained on farm operations have been held legal deductions from gross income. Plant v. Walsh, supra; J. H. Sanford, 2 B. T. A. 181; Kansas Savings & Trust Co. et al., Administrators, 2 B. T. A. 1253; H. T. Cochran, 3 B. T. A. 215; Thomas F. Sheridan, 4 B. T. A. 1299; Samuel Riker, Jr., Executor, 6 B. T. A. 890; August Merckens, 7 B. T. A. 32; Moses Taylor, 7 B. T. A. 59; James Otis, 7 B. T. A. 882; Rose P. Crane, Executrix, 9 B. T. A. 437; Hamilton F. Kean, 10 B. T. A. 97; Walter P. Temple, 10 B. T. A. 1238; E. S. Hass, 13 B. T. A. 1352; George B. Lester, 19 B. T. A. 549.
We have carefully examined the cases referred to above and others in which the Board has allowed the deduction from gross income of losses sustained in the operation of farms. From a consideration of all of them we reach the conclusion that the intention of the taxpayer with respect to the operation of the farm is material. Cf. Plant v. Walsh, supra; Thatcher v. Lowe, supra; Deering v. Blair, supra. If the taxpayer operates a farm with the intention of making a profit and not merely “ as a place of pleasure, exhibition, and social diversion” (Deering v. Blair, supra), the fact that losses may-be sustained from the operation of the farm does not change the character of the enterprise from one operated for profit to one not operated for profit.
The testimony of the petitioner in the proceeding at bar is most emphatic that the Caumsett Farm was operated for profit. He testified that, even though expensive buildings were placed on the Caum-sett Farm, he did not regard it as fair to charge the farm operations with any expense in respect of the excess cost of such buildings over the cost of ordinary farm buildings. He also, ascribed his losses from the farm operations up to 1928 as being attributable largely to the fact that the first Guernsey bull purchased for breeding purposes proved not to be valuable for such purposes; that the bull was *124 disposed of in about 1928, and another pure-bred bull acquired. He stated that subsequent results were far more satisfactory and it was his opinion that the herd could be sold at the present time, even with the depressed prices now prevailing, at a profit over all losses. There is no evidence that the Caumsett Farm was operated as a place of pleasure, or for social diversion. In the circumstances it must be held that the Caumsett Farm was operated for profit, within the meaning of the statute, and that the petitioner’s losses sustained from the operation of the farm in 1923 are legal deductions from gross income.
A similar situation exists with regard to the venture of racing and breeding horses. The petitioner had a considerable income from his racing operations for the period September 4, 1920, to December 31, 1921, which he testified he had included in his gross income for 1921 and paid a tax thereon. There can be no question that the business of racing and breeding horses, entered into in 1921 or 1922, was for the purpose of making a profit. Part of the petitioner’s testimony upon this point follows:
Q. Now, you, Mr. Field, are interested, are you not, in the raising and breeding of horses?
A. Yes, sir.
Q. When did you first do that?
A. Well, I, first of all, started in 1920, when I bought the first yearling I ever bought. The outcome of that was extremely successful, financially, and after that I invested some other money that I bad in stock, with the idea of starting a stud.
It so happens that out of the first yearlings I bought, one of them I thought turned out to be a good brood mare, and I started a stud. From that time on, I had carried it on with business-like ideas, with the idea of a further stud and raising for profit.
Q. Did you have any definite [idea] or purpose in it with reference to making money out of it?
A. Yes, sir; when I first started, in 1929, I did not know — I mean I started it as more or less of a. fluke.
Q. Did you say 1929?
A. No; I mean in 1920. Then, having made some money out of it and having a chance to enlarge upon it, with the starting off of such good brood mares as I then had, I decided to start it. I talked to several people about it and they all seemed to think it was a real good chance of making a profit, if one was able to put the capital into it; * * *
The losses sustained from the racing and breeding of horses in 1923 are deductible from gross income, in accordance with the following decisions: George D. Widener et al., 8 B. T. A. 651; aff'd., 33 Fed. (2d) 833; Margaret E. Amory, 22 B. T. A. 1398; James Clark et al., Executors, 24 B. T. A. 1235; Wilson v. Eisner, 282 Fed. 38.
The petitioner’s contribution of $1,000 to the Insulin Committee was in fact a contribution to a “ fund ” for charitable and/or scien- *125 tifie purposes within the purview of section 214 (a) (11) of the Revenue Act of 1921, since the committee was the agency of the hospital for raising the fund for the purchase of insulin for use by the hospital, an institution doing charitable work, for experiments in the cure of diabetes, a scientific endeavor. Subject to the 15 per cent limitation, the contribution should be allowed as a deduction from petitioner’s gross income.
Reviewed by the Board.

Judgment will be entered under Bule 50.