Harold M. Clark v. Commissioner.
Clark v. Commissioner
Docket No. 3037-68.
United States Tax Court
T.C. Memo 1969-241; 1969 Tax Ct. Memo LEXIS 53; 28 T.C.M. (CCH) 1260; T.C.M. (RIA) 69241; November 13, 1969, Filed. Harold M. Clark, pro se, 919 West St., Annapolis, Md., Gerald D. Babbitt, for the respondent. TANNENWALD
Memorandum Findings of Fact and Opinion TANNENWALD, Judge: Respondent determined deficiencies in petitioner's income tax of $438.52 for 1965 and $178.00 for 1966. The issues are: (1) the legal residence of petitioner at the time of the filing of the petition; (2) whether petitioner's attempt to grow seedlings of Oregon myrtle [1] amounted to a "trade or business" *55 within the meaning of section 162; [2] (3) if so, the amount of allowable deductions in connection therewith and whether petitioner suffered a theft loss of $650 in 1965 so as to entitle him to a deduction under section 165(c)(3). Petitioner, who is not a lawyer, chose to appear pro se. He did so in spite of the Court's admonition that he might find legal assistance highly desirable. As a consequence, the presentation of evidence was, to a considerable degree, unsatisfactory and was complicated by the petitioner's inability to focus on the essential issues. For example, petitioner persisted in emphasizing the botanical characteristics of Oregon myrtle rather than his own objectives in engaging in the production thereof. Extensive efforts of the Court to assist petitioner failed to produce order and relevancy with respect to much of petitioner's testimony. Under these circumstances, we have rested our determinations herein largely *56 on petitioner's credibility, allowing for his tendency to wander from the point at issue, his apparent persecution complex vis-a-vis the Internal Revenue Service, and the occasional "wish-is-father-to-the-thought" quality of his testimony. In so doing, we have, of course, recognized that the burden of proof is on petitioner. Rule 32, Tax Court Rules of Practice.
Legal Residence Issue Initially we must deal, solely for the purpose of section 7482(b), with the technical question of petitioner's legal residence at the time of the filing of the petition herein. The testimony on this point is obscure, but, based upon the allegations in the 1261 petition and the record as a whole, we find that such residence was in Annapolis, Maryland. [3]
Trade or Business Issue We turn next to the most troublesome issue, namely, whether petitioner's attempts to cultivate Oregon myrtle *57 constituted a "trade or business." Until the fall of 1963, petitioner was a bricklayer and mason by trade. In the summer of 1963 he was working in northern California, and between jobs he saw a specimen of Oregon myrtle - a tree which is native to the West Coast, where it grows wild, which can be unutilized as an ornamental tree, and whose leaves, known as California bay laurel leaves, are sold commercially as a spice and for other purposes. Petitioner became fascinated by its qualities and possibilities. After petitioner was injured in September 1963, he was able to work only sporadically at his trade. He decided he would try to make money by raising Oregon myrtle and selling either the seedings as ornamental trees or the leaves for use as spice. He gathered seeds in late 1963 and stayed in Eureka, California, during 1964. During this period he attempted to grow seedlings without success. In January 1965, petitioner drove his pickup truck to the East Coast, carrying a substantial quantity of seeds and/or plants with him. He went first to Elizabeth, New Jersey, where he tried to investigate the possibility of marketing Oregon myrtle leaves as spice. For the next two months he traveled *58 about New Jersey, Pennsylvania, and Delaware, seeking advice about the propagation of his seeds and leaving seeds at various arboretums, etc., in the apparent hope that their experience would provide him with more information and stimulate interest in the trees. In late February he got a job as a bricklayer in the Washington, D.C., area. He rented a place in Hyattsville, Maryland, a suburb of Washington, but, due to his injury, was unable to hold the job. In March, however, he found a job in Annapolis, Maryland. In early March 1965, he rented a house there with a back yard, sharing it with another tenant. He planted about 6,000 seeds in the back yard in the spring of 1965. Three hundred or so came up and, during the summer, he transplanted the seedlings into cans. When they were old enough, he hoped to sell them to regular nurseries as ornamental trees, although at or about that time three nurseries told him they were not interested. In December 1965, petitioner went back to California to gather more seeds and came back to Annapolis. In the spring of 1966, he planted the seeds but the entire crop failed due to drought. The 1965 crop, which was still in cans, weathered the drought. *59 Unfortunately, later in 1966 petitioner put too much fertilizer on them and killed them. Rather than travel out to California again to get more seeds, petitioner advertised in West Coast newspapers for people who would gather and send him seeds. His advertisements succeeded and he received approximately 15,000 seeds. He planted seeds in March of 1967; these had a high rate of germination but died soon after they came up. Petitioner later discovered that this was because the part of the lot he had used was contaminated by oil and gas from a nearby filling station. For reasons not clear from the record, there was no 1968 crop. In 1968 petitioner went to North Carolina, where he had been advised the climate would be more favorable to Oregon myrtle. Throughout the period involved herein, petitioner assiduously investigated the botanical possibilities and problems involved in growing Oregon myrtle but, because his efforts at propagation were unsuccessful, made little effort to sell the production. The key element in determining whether a taxpayer's ostensible business activities constitute a "trade or business" within the meaning of section 162 [4] is the state of 1262 mind *60 of the taxpayer - did he in good faith expect to make a profit? Lamont v. Commissioner, 339 F. 2d 377 (C.A. 2, 1964), affirming a Memorandum Opinion of this Court; Hirsch v. Commissioner, 315 F. 2d 731 (C.A. 9, 1963), affirming a Memorandum Opinion of this Court; International Trading Co. v. Commissioner, 275 F. 2d 578 (C.A. 7, 1960), affirming a Memorandum Opinion of this Court; Thacher v. Lowe, 288 Fed. 994 (S.D.N.Y. 1922); Margit Sigray Bessenyey, 45 T.C. 261 (1965), affd. 379 F. 2d 252 (C.A. 2, 1967); Henry P. White, 23 T.C. 90 (1954), affirmed per curiam 227 F. 2d 779 (C.A. 6, 1955). The test is one of actual intent, subjective and not objective. Thacher v. Lowe, supra; Margit Sigray Bessenyey, supra.As has frequently been pointed out, the issue involved inevitably turns upon the particular facts of each case. See Higgins v. Commissioner, 312 U.S. 212, 217 (1941); Hirsch v. Commissioner, supra, 315 F. 2d at p. 737; Margit Sigray Bessenyey, supra, 45 T.C. at p. 274. *61 Respondent argues that the risk of the trees failing to grow in Maryland, the seeming lack of any currently established market, and the lack of any gross income whatever as of the date of the hearing, all point towards a lack of profit motivation. On the other hand, there is no requirement that an immediate profit be realized ( Theodore Sabelis, 37 T.C. 1058 (1962)) nor does the expectation of profit need to be reasonable, although the prospect of an eventual profit has a bearing on the taxpayer's state of mind. See Margit Sigray Bessenyey, supra, 45 T.C. at pp. 273-274. Similarly, the presence of personal satisfaction from the activity does not preclude the finding of a "trade or business," if the good faith expectation of eventual profit is also present. Wilson v. Eisner, 282 Fed. 38, 41 (C.A. 2, 1922); Thacher v. Lowe, supra, 288 Fed. at p. 995. Petitioner did engage in the growing of Oregon myrtle. It was a commercially feasible activity, albeit fraught with difficulties and limitations. The years involved herein were the first two years of petitioner's activity - a period during which these difficulties and limitations, *62 which might otherwise have seriously brought into question the good faith of petitioner's intent, can be said not to have become fully apparent. Petitioner was not a high bracket taxpayer seeking to have the Federal fisc subsidize his hobby. Compare, e.g., Chaloner v. Helvering, 69 F. 2d 571 (C.A.D.C. 1934), affirming a Memorandum Opinion of this Court; Margit Sigray Bessenyey, supra.His struggles with Oregon myrtle were his primary activity; he could work as a bricklayer only sporadically. Petitioner's temperament appears to diverge rather widely from that of the archetypal reasonable man, but, as we have pointed out, "reasonableness" is not the proper test of intent. Petitioner appeared to be an honest witness. Based on this and on the record as a whole, we are satisfied that in 1965 and 1966 he had a bona fide expectation of eventually making a profit, with the result that his activities during those years constituted a "trade or business" within the meaning of section 162. Amount of Business Expenses Petitioner deducted business expenses of $2,003.80 in 1965 and $1,064.40 in 1966. Among these claimed expenses were items of rent in the amount of *63 $330 in 1965 and $390 in 1966. Petitioner paid $15 per week for the house with the back yard in Annapolis (see p. 5, supra). Petitioner lived in the house during the period March 1965 through December 1966, except for periods when he was traveling. Petitioner, on brief, suggests that his "tax home" was Idaho and that he is therefore entitled to deduct all the rent on the ground that he was "away from home." Petitioner may have had some roots in Idaho but during 1965 (after March) and 1966 he worked and was physically present in Maryland, and it appears that at that time he contemplated an indefinite stay there. Under all the circumstances, we find that Annapolis was his "tax home" in those years. E.g., James R. Whitaker, 24 T.C. 750 (1955). See also United States v. Correll 389 U.S. 299 (1967); Commissioner v. Stidger, 386 U.S. 287 (1967). On his tax returns for 1965 and 1966, petitioner allocated one-half of the rent to the 1263 back yard where he grew the Oregon myrtle trees. On the basis of the facts and circumstances disclosed by the record, petitioner has failed to convince us that this allocation was proper. We hold that only *64 one-fourth of the rent paid is allocable to petitioner's business. He is therefore entitled to a deduction of $165 for 1965 and $195 for 1966. Also among the claimed expenses were $1,118.80 in 1965 and $100.00 in 1966 for business travel. These amounts appear to have been calculated on the basis of 10 cents per mile traveled and $6 per day for food and lodging. Petitioner failed to substantiate these amounts with documentary evidence such as receipts or with any account book or diary. As modest as the amounts of petitioner's claims appear to be, they simply do not satisfy the evidentiary requirements established by Congress in 1962. Section 274(d) [5]; section 1.274-5(c), Income Tax Regs; William F. Sanford, 50 T.C. 823 (1968), affirmed per curiam 412 F. 2d 201 (C.A. 2, 1969). We are unable to sustain the claimed deductions. *65 In 1965, petitioner spent $555 reconditioning his nine-year-old Studebaker pickup truck and converted it to business use. He deducted this amount as a business expense in 1965 and deducted another $250 for depreciation in 1966. The reconditioning both added to the value of the pickup and appreciably prolonged its life; its cost must therefore be capitalized and taken gradually as depreciation. Section 1.162-4, Income Tax Regs. Although the record is far from clear, we think it a fair inference that the conversion to business use took place in March 1965, and we so find. The record is silent as to the value of the automobile when it was so converted but, applying the rule of Cohan v. Commissioner, 39 F. 2d 540 (C.A. 2, 1930), we find that it had a value of $50 at that time. Therefore, his basis for computing depreciation is $50, (G)-1 (G)-1 section 1.167 (g)-1, Income Tax Regs., plus $555 for capital improvement, section 1016(a), or $605 in all. Since petitioner used the pickup for business trips to other cities, we think his allocation of half of the use of the pickup to business is reasonable. A three-year useful life is appropriate *66 under the circumstances, and, hence, a depreciation deduction of $75.63 (one-half times three-quarters times one-third times $605) is allowable for 1965 and $100.84 (one-half times one-third times $605) is allowable for 1966. Petitioner claimed other deductions amounting to $324.40 on his 1966 return. This in cluded the cost of advertisements in West Coast newspapers, amounts paid to persons who gathered seeds for him, the cost of fertilizer and other similar supplies, and one-half the cost of his automobile insurance, license plates, and repairs. Petitioner did not substantiate any of the 34 items involved except with his own testimony. While we are unwilling to take his return at face value, we are persuaded by his testimony that he did make at least some deductible expenditures. [6] Applying the rule of Cohan v. Commissioner, supra, we hold that petitioner is entitled to deductions totaling $200 in 1966 in connection with securing seeds of Oregon myrtle, buying fertilizer and other horticultural supplies, and maintaining his pickup truck. *67 Theft Loss The final issue in this case involver a claimed theft loss of $650 in 1965. In order to have cash while on his trip to California (see p. 5, supra), petitioner withdrew $700 from his checking account in an Annapolis bank on December 8, 1965. He also cashed a paycheck. When he went to bed in Denver on Saturday, December 11, he had $650 left in his wallet. The wallet, with the money, disappeared while he slept. On Monday, December 13, he phoned his bank collect and asked them to wire him 1264 additional funds. We are satisfied that petitioner suffered a loss from theft. In light of all the other evidence, petitioner's failure to produce a police report, despite his testimony that he had notified the police, - a fact heavily relied on by respondent - does not demand a different conclusion. Since section 165(c) requires the exclusion of the first $100 of theft losses, we hold that petitioner is entitled to a deduction of $550 for 1965. Conclusion We have done the best we could with an unsatisfactory record and our findings are not entirely free from doubt. It is important for petitioner to realize that our decision herein is in all respects based upon the facts *68 and circumstances as they existed in 1965 and 1966. They are not determinative of any tax consequences for future years. This is particularly true with respect to the existence of a "trade or business"; the conditions in subsequent years may well be such as to tip the scales against the finding of a bona fide expectation of profit, and, certainly, petitioner should be better preparedinly, to substantiate his claimed deductions. As we have already pointed out, under Rule 32 of the Rules of Practice of this Court, he has the burden of proof. To recapitulate, we find petitioner is entitled to the following deductions: 1965
1966
Business rent
$165.00
$195.00
Business depreciation
75.63
100.84
Other business expenses
200.00
Theft loss
550.00
Other (not disputed by re- spondent) 202.07
$992.70
$495.84
Petitioner reported gross income of $5,015.27 and tax withheld of $639.89 for 1965 and gross income of $2,935.58 and tax withheld of $406.61 for 1966. On the foregoing basis and utilizing the standard deduction for 1966, it appears that there are the following deficiencies in income tax due from petitioner together with interest as provided *69 by law. 1965
$345.18
1966
92.00
Decision will be entered in accordance with the foregoing. Footnotes
1. A tree variously referred to as "California laurel" or "California bay laurel" as well as "Oregon myrtle." Its scientific name appears to be Umbellularia californica. ↩
2. All statutory references are to the Internal Revenue Code of 1954, as amended.↩
3. Petitioner testified that at the time the petition was filed he was enroute to North Carolina. If we were to find that he then resided there instead of in Annapolis, any appeal from our decision here under section 7482(b) would still be to the United States Court of Appeals for the Fourth Circuit.↩
4. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including - (1) a reasonable allowance for salaries or other compensation for personal services actually rendered; (2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business; and (3) rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity. * * *↩
5. SEC. 274. DISALLOWANCE OF CERTAIN ENTERTAINMENT, ETC. EXPENSES. * * * (d) Substantiation Required. - No deduction shall be allowed - (1) under section 162 or 212 for any traveling expense (including meals and lodging while away from home), * * * unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement (A) the amount of such expense or other item, (B) the time and place of the travel, entertainment, amusement, recreation, or use of the facility, or the date and description of the gift, (C) the business purpose of the expense or other item and, (D) the business relationship to the taxpayer of persons entertained, using the facility, or receiving the gift. The Secretary or his delegate may by regulations provide that some or all of the requirements of the preceding sentence shall not apply in the case of an expense which does not exceed an amount prescribed pursuant to such regulations.↩
6. The business of operating a nursery is considered farming for tax purposes. Rev. Rul. 59-12, 1959-1 C.B. 59. Consequently, petitioner is entitled to the benefits of section 180 and of section 1.162-12 Income Tax Regs.↩