## COMMISSIONER OF INTERNAL REVENUE
## v. FIELD.
### No. 74.

Circuit Court of Appeals, Second Circuit.

Dec. 4, 1933.

Pat Malloy, Asst. Atty. Gen., and Sewall Key and Francis H. Horan, Sp. Assts. to Atty. Gen. (E. Barrett Prettyman, Gen. Counsel, Bureau of Internal Revenue, of Washington, D. C., of counsel), for petitioner.

Beverley R. Robinson and Daniel B. Priest, both of New York City (Edward N. Perkins and Samuel L. Rosenberry, both of New York City, of counsel), for respondent.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

The respondent, in his income tax return for the year 1923, charged off losses sustained by him in the operation of a farm and a racing stable. The Commissioner refused to allow these losses, and, on appeal to the Board of Tax Appeals, the Commissioner's determination was reversed. 26 B. T. A. 116. He filed his petition to review here (sections 1001–1003 of the Revenue Act of 1926, c. 27, 44 Stat. 9, 109, 110, as amended by section 1101 of the Revenue Act of 1932, c. 209, 47 Stat. 169, 286 (26 USCA §§ 1225, 1226, and § 1224 and note).

This petition presents the question whether, in operating his farm and racing stable for 1923, respondent was conducting a business operated for profit so that the expenses and losses incurred therein would be deductible under section 214 (a) of the Revenue Act of 1921. Section 214 (a), 42 Stat. 239 allows as deductions from income:

"(1) All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. * * *

"(4) Losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in trade or business."

Treasury Regulations 62, promulgated under the Revenue Act of 1921, permits losses of farmers to be deducted even if the taxpayer owns and operates a farm in addition to being engaged in another trade or business, provided the farm is not operated for recreation or pleasure (article 145), and a person cultivating or operating a farm for recreation or pleasure, the result of which is a continuous loss from year to year, is not regarded as a farmer (article 38).

The respondent is engaged in the banking business. In 1923, he devoted considerable time to other enterprises. Among these were the operation of his farm on Long Island and the racing and breeding of horses in England and in this country. At his farm on Long Island he bred and raised Guernsey cattle, offered them for sale, selling some, and also sold the milk. The farm was on very valuable land, owned by his wife, but leased to the farming enterprise at $15,000 per year or $30 per acre. The enterprise was commenced in 1922 in the charge of a man experienced in breeding Guernsey cattle and under an indefinite partnership arrangement by which he was to share in the profits but not the losses, and was to receive a salary of $3,000 annually. He was a graduate of an agricultural college and had previous experience in Guernsey breeding in this country. Respondent testified that it was his intention to enter into the operation of the farm as a business enterprise, intending to develop a fine true-breeding strain and sell the stock. It was his hope to obtain a reputation and to be able to demand high prices for his products. He paid high prices for his bulls and other cattle, equipped the farm with modern buildings and equipment, and raised crops. The milk sold brought higher than market prices. His sales amounted to 200 quarts daily. In addition, he gave his personal time and attention to the project and educated himself in the breeding of cattle by study and reading. The cattle were exhibited at shows and advertised for sale. Books of account were kept and an accurate audit made of the investment and income. It was expected that the losses at the commencement of the enterprise would be greater than later because the heifers were kept rather than sold in order to improve the breeding process and to obtain a permanent herd.

In 1921, the respondent entered his racing and horse breeding operations with an intention, as he testified, of obtaining thoroughbreds with a serious and businesslike desire to make his operations profitable. He obtained what he regarded as the guidance of expert opinions, and acquired thoroughbreds for the purpose of carrying out this business for a profit. The findings below show that the methods and practice pursued indicated his desire to carry on for a profit. He knew and understood the breeding of horses, and, as found below, showed intelligence about its direction. Moreover, he testified that it was his intention to give up the enterprise if it was not successful in making money. He testified that he had just reached the point where he was confident that profits were to be made; that, if he sold his mares he could cover his losses, but that would wreck his enterprise.

The losses in 1923 at his Guernsey cattle farm were $43,282.28. His farm was started about July 1, 1923, with 30 head of pure-blood Guernsey cattle. Sales from the farm amounted to $4,518.13 up to December 31, 1923, and there was an inventory on that date of $50,311.48. The losses during this six months' period which constituted the taxable year were $43,282.38. His horse breeding in this country in 1923 was done on a farm in Kentucky. He also bred horses in Ireland since 1921, but trained them for racing in England. His trainers shared in the winnings. English accountants kept his books and made a report of receipts and disbursements in connection with racing and breeding of horses in the British Isles. Records of all receipts and expenditures in connection with breeding and racing in this country were kept under the guidance of certified public accountants. These horses were trained here and raced in this country. During 1923, his operations from racing and breeding horses showed income from purses from the American stable of $2,139.90 and from the English stables £2,250; expenses in America were $12,108.49 and those in England £9,101; the combined losses for the two stables in 1923 were $72,334.45. He continued on in the business after 1923.

There was a deficiency assessed against respondent for 1923 of $364,238.22, which included additions to income of $43,282.28 on account of the operation of the farm and $68,840.07 on account of the operation of the racing stable. The Board of Tax Appeals found that both the farm and racing stable were conducted as businesses for profit and that the losses in connection therewith were deductible in computing his net income.

If the findings of the Board have evidence to sustain them, we may conclude that the enterprises were conducted as businesses for profit and therefore the losses were properly deducted. Comm'r v. Widener, 33 F. (2d) 833 (C. C. A. 3); Wilson v. Eisner, 282 F. 38 (C. C. A. 2). In Flint v. Stone Tracy Co., 220 U. S. 107, 171, 31 S. Ct. 342, 357, 55 L. Ed. 389, Ann. Cas. 1912B, 1312, the court repeated a definition of business as "That which occupies the time, attention, and labor of men for the purpose of a livelihood or profit." It is not essential that the taxpayer be engaged solely in one business. He may have interests in several enterprises among which he divides his time. His inten-

tion is important. Thacher v. Lowe (D. C.) 288 F. 994. Unless arbitrarily arrived at, the determination of the Board of Tax Appeals must stand. Avery v. Comm'r, 22 F.(2d) 6, 55 A. L. R. 1277 (C. C. A. 5); Royal Packing Co. v. Comm'r, 22 F.(2d) 536 (C. C. A. 9). The Commissioner's determination, adverse to the taxpayer, required of the latter the initial burden of proving to the satisfaction of the Board of Tax Appeals that his losses came within the act permitting deduction as such. Wilson v. Eisner, 282 F. 38, 42 (C. C. A. 2). Of course, the court may determine whether any finding is supported by evidence. Washburn v. Comm'r, 51 F.(2d) 949 (C. C. A. 8). Also we may determine whether or not, in applying a statute to the facts, the Board of Tax Appeals has misconstrued the statute, but we are not concerned with the mere weight of evidence. W. K. Henderson Iron Works & Supply Co. v. Blair, 58 App. D. C. 114, 25 F.(2d) 538.

In the instant case, there is substantial evidence that the enterprises were conducted as a business for profit and with an expectation of ultimate profits. We cannot say that the expectation of profits is unreasonable or forecast continuous losses in the light of experience in cattle or horse breeding and racing. If the right to deduct losses under the statute required that profit appear to the court to be possible, that requirement would be quite general and would be applicable to any enterprise, whether it was farming, manufacturing, or promotion of any character. We may not, in this way, foredoom any business venture. Cattle breeding and horse racing projects are old. Some have been profitable; others have not. It is a matter of intention and good faith, and all the circumstances in the particular case must be our guide. In this case we think the respondent embarked in these enterprises with the expectation of making profits; at least he did so with an earnest and honest intention.

Judgment affirmed.