RUSSELL–MILLER MILLING CO. v. HELVERING, Commissioner of Internal Revenue.

No. 5941.

Court of Appeals of the District of Columbia.

Argued Jan. 9, 10, 1934.

Decided Feb. 12, 1934.

Earle W. Wallick and David J. Shorb, both of Washington, D. C., and Ben Jenkins, of Chevy Chase, Md., for petitioner.

Sewall Key, J. Louis Monarch, S. Dee Hanson, C. M. Charest, E. L. Corbin, and Shelby S. Faulkner, all of Washington, D. C., for respondent.

Before ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

GRONER, Associate Justice.

Petitioner is a North Dakota corporation and is engaged in milling flour. Its account books were kept on the accrual basis. Its fiscal year was from September 1 to August 31, and its income tax returns were prepared and filed on that basis.

During the fiscal year ending August 31, 1927, the British government demanded of petitioner that it file audited accounts showing profit and loss on business done in England and pay such income taxes thereon as were shown to be due. Petitioner replied that it was unable to supply such accounts, and as a result received a notice of assessment of taxes amounting to £280 for the fiscal years 1925–26, 1926–27, and 1927–28. Petitioner denied liability on the ground (a) that it was not trading in Great Britain, and (b) that, if it was, no profit had been earned on sales made there. In October, 1928, the British government offered to reduce the amount of assessment to £120 total if petitioner would admit liability and pay, and this petitioner did through its London agent.

Pending the dispute petitioner did not accrue upon its account books any amount for taxes due Great Britain for the years in ques-

tion, but in its return for 1929 it claimed credit for the sum of $582.60 (£120) paid to a foreign government. The Commissioner disallowed the claim, and the Board sustained the Commissioner.

The question here is whether petitioner should be allowed, under the circumstances we have shown, a tax credit for the fiscal year 1928–29 for foreign income taxes paid in the year on income for prior years.

Section 32 of the Revenue Act of 1928 (45 Stat. 804, 26 USCA § 2032) provides that taxes imposed by foreign countries shall be allowed as a credit against a domestic taxpayer's income taxes as provided in section 131 of that act. Section 131 (a) (1) of that act (45 Stat. 829, 26 USCA § 2131 (a) (1) provides that a taxpayer's income taxes shall be credited with taxes paid or accrued during a taxable year to any foreign country. Subdivision (d) of that section provides that credits for foreign taxes may, at the taxpayer's option and regardless of the basis upon which its books are kept, be taken in the year in which they accrued, and that they must be taken on the same basis thereafter. Section 43 of that act (45 Stat. 805, 26 USCA § 2043) provides that such credits shall be taken for the taxable year in which "paid or accrued," or "paid or incurred," according to the method of accounting used in computing the taxpayer's net income. Section 48 (c) of that act (45 Stat. 807, 26 USCA § 2048 (c) provides that the terms "paid or accrued" or "paid or incurred" shall be construed according to the method of accounting used in computing the taxpayer's net income.

Counsel for petitioner concedes that under the statute and regulations a taxpayer on the accrual basis can only take a deduction in the return for the year in which the taxes accrued. But petitioner insists that here the tax paid to Great Britain did not accrue until the year in which the payment was made, because liability therefor was "denied and contested" in the previous years. Lucas v. American Code Co., 280 U. S. 445, 50 S. Ct. 202, 74 L. Ed. 538, 67 A. L. R. 1010, is cited as in point. That was a case in which the claimed deduction grew out of a judgment for damages for breach of contract of employment. The breach occurred in 1919, the judgment was in 1922, the payment in 1923. The taxpayer had accrued a reserve to cover the contingency of liability and insisted on the right to the deduction as of the year 1919, the year of the breach. The Supreme Court rejected this contention. And so it is argued that here, by reason of petitioner's denial of liability for taxes to Great Britain, it can no more be said, than in the Lucas Case, that the tax accrued in 1926–27 or 1927–28. But we think the analogy is not so clear as petitioner insists. In the Lucas Case, as the opinion points out, a refusal to perform a contract or even an unquestionable breach does not of necessity result in loss, and this because the injured party may not prosecute his claim or may forgive the breach, and, further, even if the claim be prosecuted, the amount recoverable depends in part on future contingent events, as, for instance, where the injured party procures new employment or dies. It was because of these contingencies that the Supreme Court said that the loss could not in the year of the breach be said as a matter of "law or of undeniable fact" to have been then sustained.

But the same chance elements are lacking in the instant case. Here we are concerned with a tax imposed by law on profits on sales made in Great Britain by an outsider. The amount and basis of the tax were fixed and certain in 1926–27. All that was necessary to make it effective was the applicable conditions. If these conditions in fact obtained, the element of contingency was lacking. These conditions were factual, and the facts were peculiarly within the knowledge of petitioner. The case in that aspect is much more like United States v. Anderson, 269 U. S. 422, 441, 46 S. Ct. 131, 134, 70 L. Ed. 347, where the Supreme Court said as to the time when a tax accrued: "In a technical legal sense it may be argued that a tax does not accrue until it has been assessed and becomes due; but it is also true that in advance of the assessment of a tax, all the events may occur which fix the amount of the tax and determine the liability of the taxpayer to pay it. * * * In the economic and bookkeeping sense with which the statute and Treasury decision were concerned, the taxes had accrued." The only difference to be found between that case and this is that here petitioner, when asked for payment, denied liability on the ground that it was not trading in Great Britain, and, if it was, it had made no profit on his sales there. In either event it would owe no tax. The last position, however, qualified the first and left open only the question of amount of tax dependent upon the fact and extent of profit. The subsequent admission of liability and payment are consistent with the view that the amended tax assessment was correct, and of course in that view petitioner's action reinstated the validity of the tax as of the time it was first pressed. Certainly, as we think, it better than any one else knew the fact as well

as the extent of its liability, and equally certainly it should not be heard later to say that the debt had not accrued because without more it elected to contest it. What justification other than we have mentioned it had for a denial of liability we do not know, nor may we conclude, without some evidence to that effect, that in abandoning its previous stand and admitting liability it was impelled alone by a purpose to buy its peace. If the latter be true, the evidence should have shown it, for the information was solely in the possession of petitioner.

The case therefore, as we get it, is one in which a foreign tax appears to have been assessed against an American corporation on profits earned in the year 1925–26. It was assessed as to amount on an arbitrary basis because of petitioner's failure to furnish the statement on which it could be correctly determined. It was contested at first, as not due in any amount, but in a later year liability for a smaller sum was admitted, and it was settled on that basis. In these circumstances the amount paid accrued in the year the profits on which payment was based were made and not in the year of payment, and the Commissioner was therefore right in assessing the deficiency.

Affirmed.