CORNELIA V. CECIL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 79052.  Promulgated May 19, 1938.

*Junius G. Adams, Esq.,* for the petitioner.
*John W. Smith, Esq.,* for the respondent.

**OPINION.**

BLACK: We shall first consider the deductibility during the calendar year 1931 of the North Carolina real estate taxes in the amount of $20,267.08 which petitioner paid on May 30, 1931. Section 23 (c) of the Revenue Act of 1928 provides that in computing net income there shall be allowed as a deduction, "Taxes paid or accrued within the taxable year  *  *  *." Section 43 of the same act provides:

The deductions and credits provided for in this title shall be taken for the taxable year in which "paid or accrued" or "paid or incurred", dependent upon the method of accounting upon the basis of which the net income is computed, unless in order to clearly reflect the income the deductions or credits should be taken as of a different period.

Petitioner concedes that the taxes in question accrued during the year 1930, but contends that, since it had been her uniform practice for many years prior to 1931 to keep her personal books and records and to report her personal income and deductions on a cash basis and her return for 1931 was made on that basis, she was within her statutory right to deduct in 1931 that portion, namely, $20,267.08, of the $57,257.52 taxes assessed in 1930 against the Biltmore Estate property which was actually paid during 1931.

In referring to her "personal books and records" and her "personal income and deductions", it is assumed that reference is being made to all her books, records, income, and deductions other than the books, records, income and deductions relating to the Biltmore Dairy Farms, the Biltmore Estate, and the Biltmore House and Gardens. In any event, we find the two classifications convenient, and will hereinafter refer to the one as personal and the other as Biltmore. An examination of petitioner's income tax return for the calendar year 1931 (referred to in the stipulation as Exhibit A) shows that petitioner reported substantial amounts of personal income and deductions aside from the Biltmore income and deductions.

It is petitioner's position that the real estate taxes in question formed no part of the operating expenses of Biltmore, but belonged to the personal classification instead. From this position she argues that it was perfectly proper for her to keep her personal books and records on the cash basis and her Biltmore books and records on the accrual basis, and cites as authority therefor *Joseph Stern*, 14 B. T. A. 838.

The respondent contends that the *Stern* case is inapplicable and distinguishable on the facts; that petitioner's transactions which we have classified above as personal did not amount to a separate trade or business; that the *Stern* case applies only where there are separate businesses; that where both the accrual and the cash bases are used, as they are used in the instant case, the predominating basis should be adopted; that in the instant proceeding the accrual basis predominates and should have been applied to her personal transactions as well as her Biltmore transactions; and that the instant proceeding is ruled by *John I. Chipley*, 25 B. T. A. 1103.

In the *Stern* case, Joseph and Samuel Stern were partners operating under the name of Stern Brothers. The partnership operated two separate and distinct businesses, wholly different in character— one a mercantile business and the other a coal land business. The accounts of the two businesses were kept separate and distinct. The accounts of the mercantile business were kept on the accrual basis; those of the coal land business on the cash basis. This method of keeping the accounts had been regularly and consistently followed for many years. Under these circumstances we held that, since the two businesses were separate and distinct and in each case the system used reflected accurately the income received, the use of a different system of accounting for each was proper.

In the *Chipley* case, John I. Chipley was president of a corporation engaged in business as an automobile dealer at Wilmington, North Carolina. He was also engaged in business in his individual capacity as a dealer for the same make of automobile at Greenwood, South Carolina. The books in connection with his individual busi-

ness were kept on the accrual basis. He had some income, not connected with his individual business and negligible in amount, which he did not accrue on his books, but he recorded it as and when received. He was also given credit on the corporation's books for an annual salary of $12,000 as president. During the taxable year he withdrew only $1,819.92 from his salary account. Under the facts in that case we held that the accrual method overwhelmingly predominated in the keeping of Chipley's books and, therefore, he should have reported in his gross income the full amount of the $12,000 salary which was credited to his account on the books of the corporation, and not merely the $1,819.92 which he withdrew in cash from his salary account with the corporation.

The instant proceeding is distinguishable, we think, from the *Chipley* case. There, the items not connected with the individual's separate business were negligible and regarded by us as insignificant. Here, petitioner's personal income reported on her return, aside from her Biltmore income, amounted to $168,264.15, exclusive of $173,-609.67 reported as tax exempt interest. These items were numerous and not insignificant. They were separate and distinct from the Biltmore items. The books in connection with the personal items were kept and the income was returned on a cash basis. The books in connection with the Biltmore items were kept and the income was returned on the accrual basis. This had been petitioner's uniform practice for many years. We think the principles applied in the *Stern* case apply here. We do not think it makes any difference in this case whether petitioner's personal transactions amounted to a separate business. We hold, therefore, that it was proper for petitioner to report her personal items on the cash basis and her Biltmore items on the accrual basis, but this holding does not decide the issue in petitioner's favor.

We do not agree with petitioner's position that the real estate taxes in question formed no part of the operating expenses of Biltmore but belonged to the personal classification instead. It was stipulated that these taxes were for the property tax year 1930–1931, and that they were assessed against the Biltmore Estate property. It is, therefore, our opinion that they should be taken into account on the same basis that all the other items of Biltmore are accounted for, namely, on an accrual basis.

Undoubtedly if these taxes had been an expense of the dairy business, they should have been treated on an accrual basis, for the books of that business were admittedly on the accrual basis, but it has been stipulated that "no part of said taxes were paid by or charged to the business owned and conducted by the petitioner under the name of Biltmore Dairy Farm." However it has also been

stipulated that "The books of the Biltmore Dairy Farms, Biltmore Estate and Biltmore House and Gardens were kept, and the income and deductions were returned, on an accrual basis, and all the balance of petitioner's books and accounts were kept, and the income returned, on a cash basis." Therefore it appears plain that all income and deductions, except taxes, connected with the Biltmore Estate were treated by petitioner on an accrual basis. Petitioner concedes that the $57,257.52 taxes assessed in 1930 against the Biltmore Estate property accrued as a liability against petitioner in 1930. Therefore in view of the stipulation that the books of the Biltmore Dairy Farms, Biltmore Estate, and Biltmore House and Gardens were kept and the income and deductions returned on an accrual basis, we think the taxes in question must be treated on the same basis. We, therefore, sustain the Commissioner in his disallowance of $20,267.08 taxes which were paid by petitioner on the Biltmore Estate property in 1931 but had accrued in 1930. If the taxes had been on other property which petitioner owned not connected with the Biltmore Estate, the answer might be different. In fact the statement attached to the deficiency notice shows that, of the $79,024.56 taxes claimed as a deduction by petitioner on her return, $58,757.48 has been allowed as a deduction and only the $20,267.08 which the Commissioner determined accrued against the Biltmore Estate property in 1930 has been disallowed.

The second issue is whether petitioner is entitled to deduct from her gross income for the year 1931 certain additional expenditures, aggregating $36,309.18, which were incurred and paid during that year as being incident to and necessary in the operation of the Biltmore Estate and the Biltmore House and Gardens. If allowable, authority for the allowance must be found in section 23 of the Revenue Act of 1928, the pertinent part of which is as follows:

SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

(a) *Expenses.*—All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered * * *.

Petitioner did not claim the additional expenditures aggregating $36,309.18 as a deduction in her 1931 income tax return. The issue was properly raised by an amendment to the petition filed in the present proceeding. The additional expenditures of $36,309.18 are itemized in the stipulation of facts herein previously set forth, and are in addition to the $44,460.07 representing salaries, wages, and sundry items of expense incurred and paid in connection with the exhibition of the Biltmore House and Gardens. The latter amount

of $44,460.07 was deducted by petitioner in her return for the year 1931 and was allowed by the respondent. Petitioner in her return reported as a part of her gross income the amount of $41,286.73 as representing $38,653.50 from admissions to the landscaped portion of the Biltmore Estate and the Biltmore House and Gardens and $2,633.23 from sales of views of Biltmore Estate and Biltmore House and Gardens.

The respondent in his brief has divided the Biltmore Estate into three separate departments, namely, (1) Biltmore Dairy Farms, (2) Biltmore House and Gardens, and (3) landscape department. He concedes, and it is so stipulated, that the Biltmore Dairy Farms is a separate trade or business. The income and deductions of the Biltmore Dairy Farms are not in controversy in this proceeding.

The deductibility of the expenditures aggregating $44,460.07 is likewise not in issue between the parties, although, as will appear later, it is hard to reconcile the respondent's allowance of this item and his refusal to allow the item of $36,309.18. The respondent epitomizes his entire argument by the single statement that the ownership and maintenance of the Biltmore Estate "as a whole" is not a trade or business within the meaning of section 23 (a) of the Revenue Act of 1928. In his brief, "Respondent denies that petitioner is entitled to the deduction of $36,309.18 for the reason that the ownership and operation of the Biltmore Estate, exclusive of the Dairy Farms, is not a trade or business within the meaning of Section 23 (a), *supra*, and the allocated sum of $36,309.18, or any part thereof, does not qualify as 'ordinary and necessary' expenses paid or incurred during the taxable year 1931 in carrying on any trade or business for profit within the purview of said section." If the only department of the Biltmore Estate to be recognized as a trade or business is the Biltmore Dairy Farms, then it is difficult to find the authority for allowing the $44,460.07 which respondent has allowed as an ordinary and necessary expense paid or incurred during the taxable year. It was stipulated that the $44,460.07 was "incurred and paid in connection with the exhibition of the Biltmore House and Gardens." It was also stipulated that the $36,309.18 was incurred and paid and was incident to and necessary in the operation of the "Biltmore Estate and Biltmore House and Gardens." The only difference between the two items is that the $44,460.07 was applicable only to department (2), whereas the $36,309.18 was applicable to departments (2) and (3). The admission fees paid by the public, which constituted over 93 percent of the gross receipts, were for admissions to both departments (2) and (3). The respondent in his brief explains the allowance of the $44,460.07 item as follows:

There is no question but that the receipts amounting to $41,286.73, received from the public for the privilege of visiting the Biltmore Mansion and Gardens

are taxable as gross income, as defined by Sec. 22 (a), Rev. Act of 1928, 45 Stat. 791, and respondent has reciprocated petitioner's generosity in permitting petitioner to deduct from gross income for 1931 the sum of $44,460.07, made up by specific items of expenses absolutely necessary and incident to opening the mansion and grounds to visitors.

We doubt if there is any material distinction between the expenditures aggregating $44,460.07 and the expenditures in question aggregating $36,309.18. It does not follow, however, that because the respondent has allowed the former we must allow the latter. What he has done in a matter which is not before us does not control our decision in a matter which is before us.

Is petitioner entitled to deduct the amount of $36,309.18 in question under section 23 (a), *supra?* The answer depends upon whether the opening of the landscape portion of the Biltmore Estate and the Biltmore House and Gardens to the public as a museum at fixed admission charges amounted to the "carrying on of any trade or business" as that term is used in the statute. Whether one is engaged in the carrying on of a trade or business has been adjudicated in many cases. A few of the leading cases are *Plant* v. *Walsh*, 280 Fed. 722; *Wilson* v. *Eisner*, 282 Fed. 38; *Thacher* v. *Lowe*, 288 Fed. 994; *Flint* v. *Stone Tracy Co.*, 220 U. S. 107, 171; *Deering* v. *Blair*, 23 Fed. (2d) 975; *Commissioner* v. *Widener*, 33 Fed. (2d) 833; *Hutchings* v. *Burnet*, 58 Fed. (2d) 514; *Doggett* v. *Burnet*, 65 Fed. (2d) 191; *Commissioner* v. *Field*, 67 Fed. (2d) 876; *Chaloner* v. *Helvering*, 69 Fed. (2d) 571; *Whitney* v. *Commissioner*, 73 Fed. (2d) 589; *Croker* v. *Helvering*, 91 Fed. (2d) 299. In all the cited cases, with the possible exception of some obiter dictum in *Plant* v. *Walsh*, *supra*, one of the material tests to be applied is whether one intends to make a profit. "Unless you can find that element it is not within the statute * * *." *Thacher* v. *Lowe*, *supra*. A person's transactions will not be excluded from the classification of business merely because they result in loss instead of profit if the honest intention to make a profit is present. *Deering* v. *Blair; Commissioner* v. *Widener; Commissioner* v. *Field; Whitney* v. *Commissioner;* all *supra*. The rule was stated in *Doggett* v. *Burnet*, *supra*, as follows:

The proper test is not the reasonableness of the taxpayer's belief that a profit will be realized, but whether it is entered into and carried on in good faith and for the purpose of making a profit, or in the belief that a profit can be realized thereon, and that it is not conducted merely for pleasure, exhibition, or social diversion.

The stipulation, and that is all the evidence that we have, is silent as to any intention on petitioner's part to make a profit out of the exhibition. In Exhibit C, which is attached to the stipulation and is a printed description, together with a few pictures of the Biltmore House and Gardens and Biltmore Estate, it is stated that "An admis-

914

sion charge is made, estimated as sufficient to defray the expenses of opening the house and grounds to the public." From this statement it would seem that all petitioner intended to do was to try to break even. It does not show an intention to operate for a livelihood or profit.

A considerable portion of the stipulation and of the respondent's brief was devoted to the question of whether petitioner had abandoned the estate as a residence. We do not think this is of prime importance. Even if petitioner had continued to reside on the estate, she could still have operated a part of it as a business, and did unquestionably do so as to the Biltmore Dairy Farms.

On the primary question our holding must be that in opening this imposing estate and grounds to the public as a museum and park at a nominal admission fee, estimated as sufficient only to defray the expenses, there was no unqualified intention on petitioner's part to operate for profit. We therefore find that the Biltmore Estate, aside from the Biltmore Dairy Farms, was not a trade or business as that term is used in section 23 (a) of the Revenue Act of 1928. It follows that petitioner is not entitled to deduct the additional deduction claimed in her amendment to the petition.

Reviewed by the Board.

*Decision will be entered for the respondent.*

ARUNDELL, SMITH, and VAN FOSSAN dissent.