**CECIL v. COMMISSIONER OF INTERNAL REVENUE.**
**No. 4377.**

Circuit Court of Appeals, Fourth Circuit.
Jan. 9, 1939.

Junius G. Adams, of Asheville, N. C. (Adams & Adams, of Asheville, N. C., on the brief), for petitioner.

John A. Gage, Sp. Asst. to Atty. Gen. (James W. Morris, Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for respondent.

Before NORTHCOTT, Circuit Judge, and WEBB and CHESNUT, District Judges.

CHESNUT, District Judge.

The Commissioner of Internal Revenue on February 7, 1935, notified the taxpayer, Cornelia V. Cecil, of a proposed deficiency income tax assessment for the year 1931 in the amount of $2,924.86. She thereupon petitioned the Board of Tax Appeals for a redetermination of the deficiency. On fully stipulated facts the Board (three members dissenting) confirmed the action of the Commissioner, 37 B.T.A. 904; and the taxpayer has now filed her petition here to review this ruling of the Board.

Two items, both claimed deductions from income, are in controversy. One deduction claimed by the taxpayer was $20,267.08 paid on account of county, town and city taxes for the tax year 1930-1931 assessed against the Biltmore Estate in Buncombe County, North Carolina, near Asheville. The other item claimed as a deduction was in the amount of $36,309.18, as a part of the cost of the maintenance and operation of the Biltmore Estate which is owned, maintained and operated by the petitioner as a museum and park open to the public for an admission charge. This latter item was not considered by the Commissioner but was presented to the Board by an allowed amendment of the taxpayer's petition for redetermination. The Board disallowed both items.

We will first consider the deductibility of the item of $36,309.18 for maintenance. The question presented is whether the operation of the Biltmore Estate constituted the carrying on of a "business" within the meaning of that word in section 23(a) of the Revenue Act of 1928 (45 Stat. 791, 26 U.S.C.A. § 23(a)) which reads:

"Deductions from gross income. In computing net income there shall be allowed as deductions: (a) Expenses. All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business."

The relevant facts, taken from the stipulation and findings by the Board are as follows. The Biltmore Estate, situated in Buncombe County, North Carolina, near Asheville, comprises 12,000 acres of ground, much of which is highly landscaped and on which is situated Biltmore House and Gardens constructed in the years 1890 to 1895 by George W. Vanderbilt at a cost of several million dollars. The Mansion House itself covers about four acres of ground and contains a very notable collection of paintings, antiques and other objects of art. The Gardens are elaborate and extensive and there are 17 miles of improved roadways. About 2500 acres of the Estate are used for the purpose of a large dairy farm with a herd of 700 milk cows, and the products thereof are widely sold in neighboring territory. The Estate as a whole constitutes a unique establishment which is a conspicuous landmark in Western North Carolina. About

seven hundred persons are employed in its care and management.

The taxpayer is a daughter of the first owner and occupied and used the property as her residence for some years prior to March 15, 1930 when she discontinued her personal residence there and opened the property to the public for an admission charge as a Museum and Gardens and Landscaped Estate. For a year or two thereafter she maintained her residence in Washington or New York but in 1932 she and her children went to England where she has continuously since been resident. The House and Gardens and about 10 miles of landscaped roadways on the Estate are open to the public for an admission charge of $2.00, in most cases, every day in the year except a few holidays.

The gross income from the activities conducted on the Estate for the year 1931 amounted to $573,782.37. Of this amount $38,653.50 resulted from paid admissions to the Estate, House and Gardens, and $2,633.23 represented the gross sale of views of the Estate. These receipts were included by the taxpayer as a part of her taxable income. No personal or living expenses of any kind of herself or family were charged against the receipts from the Estate. The maintenance and operation of the Estate including the dairy farm, for the year 1931 resulted in a net loss of $10,608.29, exclusive of taxes and the maintenance item now in controversy. The Commissioner allowed the taxpayer's deduction in the amount of $44,460.07 representing salaries and wages and sundry items of expense incurred and paid in connection with the exhibition of Biltmore House and Gardens, but did not consider the item of $36,309.18 now in controversy, which had not been included by the taxpayer in her return, but was set up by her in the proceeding before the Board by an allowed amendment, and was claimed by her as a further deduction for maintenance of the landscaped portion of the Estate open to the public for an admission charge. For the year 1931 the taxpayer reported an income of $173,599.67 from non-taxable securities, and a capital net gain from the sale of assets held more than two years in the amount of $150,272.45. The return further showed total deductions for taxes in the amount of $79,024.56, which included the item of $20,267.08 in dispute. The taxpayer reported and paid a tax of $9,490.14, computed at the rate of 12½ per cent of the capital gain of $150,272.45, less $74,351.29, the latter figure representing the "excess of ordinary deductions over ordinary income".

In refusing to allow the deduction of the item of $36,309.18 for maintenance, the Board, as it appears from its opinion, acted on the view that the operation of the Estate, as a place of exhibition for the public for an admission charge, was not the carrying on of a "business" within the meaning of the statute, unless it affirmatively appeared that the taxpayer intended to make a profit from the enterprise; and the Board concluded, in the absence of any express statement in the stipulation as to the taxpayer's intention, that she did not intend to make a profit, by reason of the inclusion in a printed circular descriptive of the Estate, of the sentence reading— "An admission charge is made, estimated as sufficient, to defray the expenses of opening the House and Gardens to the public."

In our opinion the Board acted on a too narrow and restricted interpretation of the statute. The term "business" as here used was evidently not intended to have a technical meaning but to be understood in its ordinary acceptation. It is a comprehensive term which, as used in the corporation income tax law of 1909, was defined by the Supreme Court in Flint v. Stone Tracy Co., 220 U.S. 107, 31 S.Ct. 342, 55 L.Ed. 389, Ann.Cas.1912B, 1312, and Von Baumbach v. Sargent Land Co., 242 U.S. 503, 515, 37 S.Ct. 201, 204, 61 L. Ed. 460, as including "that which occupies the time, attention, and labor of men for the purpose of a livelihood or profit". In United States v. Atlantic Coast Line Co., 4 Cir., 99 F.2d 6, 7, this court, in an opinion by Judge Northcott, approved the definition given in Black's Law Dictionary, that " 'business' is a very comprehensive term and embraces everything about which a person can be employed". In the adjudicated cases which have applied the word as used in section 23(a) of the Revenue Act of 1928, and in corresponding sections of other income tax statutes, there is the recurrent expression that the enterprise must have been undertaken for "gain or profit"; and in many of the cases the test is stated in terms which generally distinguish between "business" and "pleasure". Thus in Doggett v. Burnet, 62 App.D.C. 103, 65 F.2d 191, 194, the Court of Appeals of the District of Columbia, said:

"The proper test is not the reasonableness of the taxpayer's belief that a profit will be realized, but whether it is entered into and carried on in good faith and for the purpose of making a profit, or in the belief that a profit can be realized thereon, and that it is not conducted merely for pleasure, exhibition, or social diversion."

In George v. Commissioner, 22 B.T.A. 189, 195, the Board said:

"The real test is whether the operation was carried on as a business for gain or whether it was carried on for recreation or pleasure. And this question is largely a matter of the intent of the petitioner."

The taxpayer's intention is important (Commissioner v. Field, 2 Cir., 67 F. 2d 876, 877) but not necessarily controlling, as the nature of the enterprise and its financial results may be even more important. Thacher v. Lowe, D.C., 288 F. 994. That substantial losses, rather than some net profit, have resulted does not prevent the enterprise from being a business within the meaning of the statute. Thus in Wilson v. Eisner, 2 Cir., 282 F. 38, the conduct of a racing stable by the taxpayer on which he made a profit for about one-third of the time but lost money for two-thirds, was held a business enterprise. To the same effect is Commissioner v. Widener, 3 Cir., 33 F.2d 833.[1] Similar decisions were reached in Plant v. Walsh, D.C., 280 F. 722, where the taxpayer conducted a very expensive farm; in Commissioner v. Fields, 2 Cir., 67 F.2d 876, in the case of a farm and racing stables; and also in Doggett v. Burnet, 62 App.D.C. 103, 65 F.2d 191, where the taxpayer was engaged in a long losing business of publication and sale of books of a particular religious nature. Nor did long continued losses in maintaining an orchard destroy its business character. George v. Commissioner, 22 B.T.A. 189, 194. But if the gross receipts from an enterprise are practically negligible in comparison with expenditures over a long period of time it may be a compelling inference that the taxpayer's real motives were those of personal pleasure as distinct from a business venture, as in Chaloner v. Helvering, 63 App.D.C. 85, 69 F.2d 571, where a wealthy taxpayer expended yearly $24,000 for secretarial expenses in connection with his hobby of writing books from which practically no income was realized; and similarly where the taxpayer operated an ordinary farm, or a stock farm, as an adjunct to his residence, at very substantial losses. Deering v. Blair, Commissioner, 57 App.D.C. 367, 23 F.2d 975; Thacher v. Lowe, D.C., 288 F. 994. This case involves a situation quite different in nature from any of those just cited.

The dominant feature here is that the taxpayer has abandoned the personal use and enjoyment of a valuable and unique residential property and converted it to the use and enjoyment of the public for compensation, and has thus changed an unproductive asset into one for the production of income. We know of no decided case which has heretofore applied the provisions of section 23(a) of the Revenue Act of 1928, or the corresponding sections of other Acts, to a similar situation to determine whether it constituted a "business". But Heiner, Collector v. Tindle, 276 U.S. 582, 48 S.Ct. 326, 72 L.Ed. 714, dealt with a closely analogous case, arising under the Revenue Act of 1918, section 214(a) 5, 40 Stat. 1066, of which allowed deductions by individuals of "losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in any transaction entered into for profit, though not connected with the trade or business".[2] In that case the taxpayer had built a residence at a cost of $172,000, which he abandoned in 1901, and rented until 1920 when it was sold at a loss, and the question was whether the loss was deductible. The applicable Regulation precluded the deduction of a loss on the sale of a residence; but the Supreme Court held that when the taxpayer discontinued

---

[1] In this case the issue was whether the operation of a racing and breeding stable was a sport or business. The Board held it a business and its findings were confirmed by the Circuit Court of Appeals. In the Board's opinion it was said: "The fact that the petitioners were wealthy enough to afford a hazardous occupation in which they found pleasure despite discouraging losses does not establish the essential nature of the occupation. If they were utterly indifferent to whether there was a loss or gain or if it were shown that the stables were an incident to the social or domestic aspects of their daily lives, the result might be against them as in Thacher v. Lowe [D.C.] 288 F. 994, 2 A.F.T.R. 1931."

[2] The corresponding section in the Revenue Act of 1928 is 23(e), 45 Stat. 800, 26 U.S.C.A. § 23(e).

the use of the property as a residence and rented it to others, he thereby entered into a transaction for profit, which made the loss deductible when properly computed under other sections of the law. Mr. Justice Stone said [page 327]:

"But the words 'any transaction' as used in subsection (a) 5, are not a technical phrase, or one of art. They must therefore be taken in their usual sense, and, so taken, they are, we think, broad enough to embrace at least any action or business operation, such as that with which we are now concerned, by which property previously acquired is devoted exclusively to the production of taxable income."

In the instant case the taxpayer did what was equivalent to renting the property when she devoted it exclusively to the enjoyment and use of the public for an admission fee, and realized therefrom the substantial annual gross receipts of about $40,000, which probably represented for that year its highest utility for the production of income.

The several activities on the Biltmore Estate have all the usual characteristics of a business enterprise. They are conducted on a business basis with formal bookkeeping. The Estate is advertised as open to the public and is regularly kept open throughout the year, and the fees for admission are definitely stated. The owner derives no personal enjoyment or benefit from the property other than the receipts of the business. Neither she nor any of her family reside there and none of their personal, living or family expenses (section 24(a) (1) of the Act, 26 U.S.C.A. § 24(a) (1)) are charged against the gross income. These being the conditions, it is impossible to say that the Estate is being conducted by the taxpayer for her personal pleasure or social diversion, or as a hobby, in contrast to a business enterprise. On the contrary it seems reasonably clear that the business was conducted for profit or gain, to the extent that is an implied requirement of the statute.[3] It was not questioned either by the Commissioner or the Board that the dairy farm conducted on the

Estate was a business enterprise; and the Commissioner in allowing the deduction of $44,460.07 for the expenses of maintenance of the House and Gardens must have held the same view with respect to them. The Board recognized in its opinion that there was no distinction fairly to be made between this item allowed by the Commissioner and the additional item for maintenance of roadways now in controversy. There is no dispute as to the necessity and reasonableness of the latter item. The only question is whether it was expended in a business. We conclude that it was.

█ █ We cannot concur in the reasoning of the Board that the enterprise was not conducted for profit because the admission charge was fixed at a sum "estimated as sufficient to defray the expenses of opening the house and gardens to the public". The casual and indefinite nature of this sentence in the printed circular, in view of the essential nature of the case contained in the whole stipulation of facts, seems not a substantial basis for the conclusion reached. And as it appears in the opinion of the Board as a conclusion, and was not made as a finding of fact, or inference of fact (see Helvering v. National Grocery Co., 304 U.S. 282, 58 S.Ct. 932, 82 L.Ed. 1346, and Palmer v. Commissioner, 302 U. S. 63, 58 S.Ct. 67, 82 L.Ed. 50), we do not feel bound to accept it, especially as in our opinion it is not supported by substantial evidence when the stipulation of facts is read as a whole. As the facts are fully stipulated and not in dispute the ultimate question is purely one of law. Wilson v. Eisner, 2 Cir., 282 F. 38, 42. The statement in the circular was apparently made as of 1930, when the Estate was first opened to the public and was professedly an estimate only. The actual receipts would, of course, depend upon the number of visitors, and these would naturally increase from year to year as a result of cumulative publicity given to the enterprise. The gross receipts for the first full year were substantial in relation to the expenses, and the record does not inform us what has been the financial results of later

---

[3] See Paul & Mertens, Law of Federal Income Taxation, Vol. 3, s. 26.97, p. 252, where, in discussing the case of Heiner v. Tindle, 276 U.S. 582, 48 S.Ct. 326, 72 L.Ed. 714, the authors say: "The Court found a conversion of a residence into an income-producing property. Whether the property yielded an actual profit does not appear and it was not considered; at any rate, it is immaterial as the property was converted from a non-revenue producing source to a source of income; as such it was a transaction for profit, taking the word profit in its broad sense of gain or income, as distinguished from no gain or actual outlay."

years; but it does appear from the record that the enterprise has been continued to the present, and it is a well known fact locally that Asheville is largely visited by conventions and other transient guests who constitute potential patronage for the Biltmore Estate which, by virtue of its unique character, is an outstanding local attraction. Nor was the admission fee charged a nominal one, as suggested in the Board's opinion, if general experience in similar matters can properly be consulted.

In deciding the case on the view that the enterprise could not as a matter of law be considered a "business" unless the taxpayer intended and expected a net profit, we think the Board adopted too narrow a concept of the word "profit" as applied to the situation here presented. The taxpayer was not investing fresh capital in a new enterprise but was endeavoring to make presently owned property productive of new income. As previously indicated, the case is quite like the renting of a personal residence, which may produce income. but not necessarily net income when all factors of cost are considered. In Heiner v. Tindle, the amount of the rental does not appear, and was evidently not considered vital in determining that the transaction was one entered into for profit. Of course each case on this branch of the income tax law must be considered upon its own particular facts and merits. To constitute a bona fide business the gross receipts must have substantial relation to the expenses of operation, and the facts as a whole must exclude a finding that the enterprise was only a scheme for tax evasion. The stipulation in this case fairly meets this test.

The determination of the first question, that the operation of the Biltmore Estate constitutes a business, points the path to the decision of the second question, whether the taxes assessed against the Estate in 1930 but not paid by the taxpayer until 1931, can properly be deducted from her 1931 income. It is stipulated that her books for the Estate business were kept on the "accrual" basis; while her more personal books for all other income accounting were kept on a "cash" basis. The tax in question was assessed by the local authorities for the tax year April 1, 1930 to April 1, 1931, on November 17, 1930. By the local law the tax bill could be discounted at 2% if paid during 1930, and could be paid at par during January 1931, but accumulated interest at 1% per month if not paid until after February 1, 1931. The total tax assessed against the Biltmore Estate was $57,257.52; of which amount the taxpayer discounted and paid $35,671.-76 on November 15, 1930, upon a preliminary estimate of the amount of the tax. The balance of the tax, (less a small amount not here involved) $20,267.07, was paid by the taxpayer May 30, 1931. She deducted that amount in her return for 1931, but it was disallowed by the Commissioner and his action was confirmed by the Board.

The applicable sections of the Revenue Act of 1928 are sections 23(c), 41, 43 and 48(c), 26 U.S.C.A. §§ 23(c), 41, 43, 48(c). Section 23(c) allows deductions for "taxes paid or accrued within the taxable year" with certain exceptions not here pertinent. Sections 41, 43 and 48(c) read:

"§ 41. General rule.

"The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income. * * *"

"§ 43. Period for which deductions and credits taken.

"The deductions and credits provided for in this title shall be taken for the taxable year in which 'paid or accrued' or 'paid or incurred', dependent upon the method of accounting upon the basis of which the net income is computed, unless in order to clearly reflect the income the deductions or credits should be taken as of a different period."

"§ 48. Definitions. * * *

"(c) Paid, incurred, accrued. The terms 'paid or incurred' and 'paid or accrued' shall be construed according to the method of accounting upon the basis of which the net income is computed under this Part."

These sections seemingly contemplate that the taxpayer's books should be uniformly kept on either the "cash" or "accrual" basis. The complication here arises from the fact that the taxpayer used one basis for the business of the Biltmore Es-

tate 'and another for her other income. The question involved is whether we must apply the accrual or the cash basis to the tax item in question. The Board, after considering its prior decisions in the cases of Joseph Stern v. Com'r, 14 B.T.A. 838, and John I. Chipley v. Com'r, 25 B.T.A. 1103, held 'that the taxpayer's dual system was generally permissible for her situation; but concluded that, as the taxes on the Biltmore Estate were clearly allocable to the expense of the business of the Estate, they must be treated on the accrual basis; and therefore as the item of $20,-267.08 paid in 1931 had *accrued* in 1930, it could not be deducted in the 1931 return.

■ The provisions of the 1928 Revenue Act with respect to cash or accrual accounting as the basis for computation of net income are the result of a gradual development through the several Acts. United States v. Anderson, 269 U.S. 422, 46 S.Ct. 131, 70 L.Ed. 347. And the particular meaning of the word "accrued" as applied to taxes in income tax accounting has not always been the same, but has varied with the context and subject matter of the statute. Sometimes it has been applied in the sense of "when payable" (United States v. Woodward, 256 U.S. 632, 41 S.Ct. 615, 65 L.Ed. 1131; Cf. United States v. Anderson, 269 U.S. 422, 441, 46 S.Ct. 131, 70 L.Ed. 347, and United States v. Mitchell, 271 U.S. 9, 13, 46 S.Ct. 418, 70 L.Ed. 799); but as the word is now used in the quoted sections of the 1928 Act, it is clear that it refers to the time when the liability becomes fixed rather than when it is payable. Niles Bement Pond Co. v. United States, 281 U.S. 357, 50 S.Ct. 251, 74 L.Ed. 901; Planet Line, Inc., v. Commissioner, 2 Cir., 89 F.2d 16; Continental Baking Corp. v. Helvering, 64 App.D.C. 241, 77 F.2d 119; Russell-Miller Milling Co. v. Helvering, 63 App.D.C. 74, 69 F.2d 392; Parrott Estate Co. v. McLaughlin, 9 Cir., 89 F.2d 188, 190.[4] With respect to local property taxes it is generally necessary to consult the local legislation to determine when the taxes accrued. However, we are here left in no doubt as to whether the taxes in question accrued in 1930, because it is conceded by the taxpayer's counsel that they did accrue in that year.

■ As it is established that the taxes accrued in 1930 and the taxpayer's Estate books were kept on the accrual basis, we think the Board rightly concluded that the taxes, which were an expense of the latter business must also be treated on the accrual basis, and were therefore not deductible in 1931. It is argued for the taxpayer (1) that she had uniformly for many years prior to 1931 allocated all her property taxes, including the Biltmore Estate taxes, to her personal income bookkeeping, which was on the cash basis, without objection theretofore by the Commissioner; (2) that this was a reasonable practice on her part because the net income from the Estate property, including the dairy farm business, was not sufficient to pay the taxes; (3) that while the volume of separate transactions affecting the Estate property greatly outnumbered the items of her other income, nevertheless the gross and net amount of her other income for 1931 substantially exceeded the gross and net income from the business of the Estate, and therefore the cash basis should be regarded as her predominant income accounting basis; and (4) that the disallowance of the item results in tax accounting that fails to reflect the true taxable income of the petitioner for the year and results in injustice to her. This argument is plausible and would be persuasive were it not for the definite change made by the taxpayer in 1930 with regard to the Biltmore Estate. Theretofore it had been used as her personal residence, and it was perhaps natural and reasonable to allocate the taxes on the property to her general income account rather than to the bookkeeping of the dairy farm which occupied only a small part of the whole estate. But when in 1930 the taxpayer abandoned the Estate as her residence and converted it into a business enterprise, as we have above determined, it was no longer permissible to treat the taxes on the property otherwise than as an expense of the business thereon conducted. While the taxpayer is given the option of bookkeeping on either the cash or accrual basis, it is important in order to prevent distortion of income that either system used should be consistent within itself. The purpose of this requirement is clearly stated by Mr. Justice

---

4 See also Salier's Accountants' Handbook, p. 1513; Paul Selected Studies in Federal Taxation, p. 24; Paul & Merten's Federal Income Taxation, ss. 11.66, 25.31; T. H. Symington & Sons, Inc., et al. v. Commissioner, 35 B.T.A. 711, 730.

Butler in United States v. Mitchell, supra, at page 12, 46 S.Ct. at page 419:

"Notwithstanding the option given taxpayers, it is the purpose of the Act to require returns that clearly reflect taxable income. That purpose will not be accomplished unless income received and deductible disbursements made are treated consistently. It was not the purpose of the Act to permit gross income actually received to be diminished by taxes or other deductible items disbursed in a later year, even if accrued in the taxable year. It is a reasonable construction of the law that the same method be applied to both sides of the account."

Affirmed in part and
Reversed in part.