OLIVER B. KILROY and ALICE W. KILROY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kilroy v. Commissioner
Docket Nos. 1538-69, 3525-70, 917-72
United States Tax Court
T.C. Memo 1973-7; 1973 Tax Ct. Memo LEXIS 279; 32 T.C.M. (CCH) 27; T.C.M. (RIA) 73007; January 10, 1973, Filed Oliver B. Kilroy, pro se. Wayne A. Smith, for the respondent. TIETJENS
MEMORANDUM FINDINGS OF FACT AND OPINION TIETJENS, Judge: The Commissioner determined deficiencies in the joint income tax liability of petitioners Oliver B. and Alice W. *280 Kilroy as follows: Docket No.
Year
Deficiency
1538-69
1965
$13,712.91
1966
8,471.67
3525-70
1967
2,781.39
1968
437.88
917-72
1970
2,306.00 2 The cases of the three dockets were consolidated for trial. The deficiency for 1968 is no longer in dispute because the Commissioner conceded the claimed business expense deduction in the amount of $2,301.41 for that year. Further, an agreement of partial settlement entered into in February 1970, based on concessions by petitioners, reduced the amount in dispute for 1965 and 1966 by $794.29 and $782.88, respectively. Other concessions by the parties concerning specific claimed deductions are detailed below. The issues for our determination are threefold: I. Whether all the claimed deductions for the remaining years in issue (1965, 1966, 1967, and 1970) are allowable under section 162. [1]
II. Whether the above disputed deductions are allowable alternatively as mining exploration expenditures under section 615, with regard to 1965, 1966, and 1967, and under section 617, with regard to 1970. The *281 Commissioner has conceded that an item designated "Project expense" in 3 the amount of $7,303.70 in petitioners' 1965 return which was disallowed as a section 162 business expense is deductible under section 615. III. Whether a disputed deduction included in I & II above and claimed in 1967 is allowable alternatively as a research and experimental expenditure under section 174. FINDINGS OF FACT Some of the facts are stipulated and are so found. The petitioners are husband and wife, and at the time the petitions were filed they resided at Tucson, Arizona. Petitioners filed joint returns for the taxable years in question; in 1965 and 1966 they filed with the district director of internal revenue in New Orleans; in 1967 and 1970 they filed returns with the internal revenue service center, Ogden, Utah. Oliver B. Kilroy (hereinafter referred to as Kilroy) graduated from Yale University in 1949 and attended the Harvard Business School in 1958. On Schedule C of his 1965 and 1966 Federal income tax returns he listed as his occupation "Promotional Investments." In the 1967 return it was listed "Business Broker and Promotional Investments." In 1970 it was "Mining Exploration *282 and Investments." 4 The precise nature of Kilroy's commercial activities eludes us. We are inclined to highlight a few of the projects he undertook. In 1965 Kilroy placed advertisements in The Wall Street Journal soliciting for offers to sell a general contracting business. In 1966 he attempted unsuccessfully to interest the Wheelabrator Corporation and Miles Laboratories, Inc., both Indiana Corporations, in mining and oil exploration. Kilroy apparently had previous experience in the oil business, as evidenced by his part ownership of several family corporations bearing the Kilroy name which were engaged in some manner in oil production. Petitioners placed in evidence a few of the details of a proposed deal with the stockholders of the Fiber-Tech Corp., an Oregon concern at that time financially embarrassed, under which Kilroy would receive funds needed to continue certain mining exploration activities in exchange for mining interests and the benefit of Kilroy's putative familiarity with the fiber pallet industry. The amount of $5,333.61 was spent by Kilroy in pursuing negotiations and $4,764 of it was deducted by him on his 1970 return as "Property (Mining) Prom. Exp." *283 There was also 5 testimony of efforts to induce a construction firm to enter the business of developing mental health clinics, for which Kilroy claimed there were Federal subsidies, with the longrange goal of persuading these firms to diversify their operations later and become partners with him in the field of mining exploration. Petitioners' position is that during the taxable years at issue, Kilroy was engaged in the business of mining and mining exploration. In none of the taxable years did petitioners report gross receipts on Schedule C of their tax returns. They reported business losses in 1965, 1966, 1967, and 1970 equal to $9,576, $1,352, $5,769.75, and $14,457, respectively. However, they did report substantial income and small losses during the taxable years from the following sources: ItemYear
1965
1966
1967
1970
Interest
19,356
$20,596
$51,256
$50,844
Net Royalties
40,379
8,604
15,682
(539)
Partnership Income
54,846
62,075
-0-
-0-
Net Long-Term Capital Gain (Loss)
102,856
-0-
496,658
(1,000) 6 With regard to petitioners' gross income, the Commissioner has conceded that there are no additions to income, *284 designated "commissions," for 1965 and 1966 in the amounts of $8,825.43 and $9,489.47, respectively. The Commissioner has also conceded that there are no additions for partnership income in the amounts of $2,435.21 and $2,374.99 for those respective years. The amount of the claimed deductions for 1965 in dispute is $2,272.63. This amount is composed of expenses incurred for telephone and utilities, automobile use and insurance, and for advertisements placed in The Wall Street Journal and other miscellaneous items. The amount of the claimed deductions for 1966 in dispute is $1,352.11. This amount is composed of business travel expense, automobile and automobile insurance expense, rent and utilities, legal and accounting fees, and miscellaneous expense. The parties have joined issue on the deductibility of the foregoing expenses under section 162 and section 615. The amount of the claimed deductions for 1967 in dispute is $5,249.81. Part of this amount is a fee of $2,650 paid to Arthur D. Little, Inc., for a study performed for Kilroy on the 7 feasibility of using lasers for deep mining operations; the results of the study were embodied in a report to Kilroy entitled "Lasers *285 in Mining." The balance, $2,599.81, consists of the following items: Depreciation
$278.39
Legal & professional fees
239.73
Office expense
1,151.87
Travel
705.93
Auto expense
49.44
Telephone
174.45
The parties have joined issues on the deductibility of the foregoing expenses under section 162 and section 615, and on the deductibility of the fee paid to Arthur D. Little, Inc., under section 174. The amount of the claimed deductions for 1970 in dispute is $5,333.61, all of which is attributable to the Fiber-Tech negotiations.The parties have joined issues on the deductibility of the foregoing expenses, which include telephone expenses of $569.61, under section 162 and section 617. OPINION The chief issue for our determination is whether Kilroy's expenses were incurred in carrying on a trade or business. Due to the trade or business requirement in 8 section 174, [2] the deductibility of the laser study fee under that section must also turn in part on our determination of the main issue. Stanton v. Commissioner, 399 F. 2d 326, 328 (C.A. 5, 1968), affirming T.C. Memo. 1967-137. It is clear that Kilroy's isolated research effort *286 could not by itself constitute a trade or business. Martin Mayrath, 41 T.C. 582, 589, (1964), affd. 357 F.2d 209 (C.A. 5, 1966); John F. Koons, 35 T.C. 1092, 1100 (1961). [3]
On the basis of the evidence before us, we cannot conclude that Kilroy was engaged in carrying on the trade or 9 business of mining and mining exploration or in carrying on any other trade or business. We are persuaded of this by two facts particularly: (1) that of the absence of gross receipts from the *287 activities which gave rise to the disputed expenses, and (2) that of the considerable nonbusiness sources of income which petitioners had at their disposal during the years in question. In Cecil v. Commissioner, 100 F.2d 896, 899 (C.A. 4, 1939), it was stated that the fact that the gross receipts from an activity are negligible in comparison with expenditures over a long period of time may justify the conclusion that the motive for incurring the expenses was a personal one and not a business motive. See also Frederick A. Purdy, 12 T.C. 888, 892 (1949). In our case not only is there a loss in every year at issue - which alone may be an indication of the absence of the requisite profit-making motive, Morton v. Commissioner, 174 F.2d 302, 304 (C.A. 2, 1949) - but also, (and we think this important) gross receipts were zero in each of those years. Petitioners were cushioned from any financial harm by substantial investment income. Under certain circumstances, which we think are present in our case, this Court 10 has taken account of the taxpayer's independent sources of income in gauging the earnestness of his profit-making intentions. Margit Sigray Bessenyey, 45 T.C. 261, 274 (1965). *288 Petitioners argue that the Commissioner has seriously weakened his contention that petitioner Kilroy was not in the trade or business of mining and mining exploration by entering into an agreement of partial settlement in which all the claimed business deductions which has been disallowed in the Notice of Deficiency for 1968 were conceded. To be sure if Kilroy had a profit-making motive in that year it is plausible that he possessed it in the years still before us, and there is no suggestion that Kilroy's motives varied over the period 1965-70. However, we cannot agree with petitioners' suggestion that we can safely draw such an inference from the mere fact of settlement. Margaret A. C. Ritter, 3 T.C. 301 (1944). The settlement process embraces more considerations than the merit of the legal issues that are finally selected for litigation. Section 7122 and section 301.7122-1(a), Procedure and Admin. Regs. 11 We think that Kilroy's activities during the taxable years in issue giving rise to the expenses before us, however denominated, did not constitute a trade or business. We do not reach the contention of the Commissioner that even if Kilroy had a trade or *289 business the expenses were not ordinary and necessary business expenses. It remains for us to determine whether the claimed deductions for all the taxable years in issue are allowable under section 615 or section 617 as applicable. Both sections contain the requirement that the expenditure be paid or incurred for the purpose of ascertaining the existence, location, extent or quality of any deposit of ore or other mineral. Save for the laser study fee (which we necessarily have determined not to be deductible under section 174, as a result of our disposition of the trade or business issue), the purported mining exploration expenses consist primarily of telephone, automobile, office-in-home expenses and the like. Any relationship between them and the enterprise of ascertaining the existence of a mineral deposit would have to be a remote one indeed. In another connection, this Court notes in Estate 12 of Alexia DuPont Ortiz DeBie, 56 T.C. 876, 892 (1971) that Congress intended to allow as a deduction expenditures reasonably connected with preparations for extracting ore. Costs of drilling, crosscutting, etc., are the types of expenses given in the committee reports *290 as examples of exploratory expenditures. See e.g., S. Rept. No. 91-552, 91st Cong., 1st Sess. (1969), 1969-3 C.B. 542. Perhaps if Kilroy had been actively engaged in activities of this nature, the claimed expenses would have been deductible incidental expenses. However, we think that standing alone the claimed deductions are not allowable under either sections 615 or 617. The fee paid A. D. Little, Inc. for the laser study is nondeductible for the foregoing reasons and one more: the purpose of the study was to open up new mining techniques, not new mines. So far as this record stands, (and it is most confusing), we cannot find that Kilroy had any mines. Decisions will be entered under Rule 50. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 unless otherwise stated. ↩
2. SEC. 174. RESEARCH AND EXPERIMENTAL EXPENDITURES. (a) Treatment as Expenses. - (1) In general. - A taxpayer may treat research or experimental expenditures which are paid or incurred by him during the taxable year in connection with his trade or business as expenses which are not chargeable to capital account. The expenditures so treated shall be allowed as a deduction. (Emphasis supplied.) ↩
3. In view of our disposition of the trade or business issue, we do not have to reach the question whether the laser study, even though not indicative of a separate business of Kilroy, can be connected with some other trade or business he might have carried on. ↩